## WATMOUGH *v.* FRANCIS.

The execution of a *fieri facias* is one act; and though a seizure be made before the giving a bond of indemnity, and a sale be made afterwards, the execution is made after the giving of the bond.

The endorsement of a second *fi. fa.* by the sheriff amounts to a re-seizure of goods already taken under a former writ.

The sheriff having levied on goods under a *fi. fa.*, a second *fi. fa.* was delivered to him, on which a levy was made, and notice received of title in a stranger. The plaintiff in

the second writ then executed a bond to the sheriff, reciting the *fi. fa.*, conditioned to save the sheriff harmless, "by reason of his executing said writ, and attaching and making sale by force and virtue of said writ of the personal property of any person supposing them to be the property of defendant." The sheriff then proceeded to sell the goods, which brought less than the amount of the first writ, and the proceeds were paid to the first execution creditor. Judgment having been recovered by the real owner of the goods in an action of trespass, the second execution creditor is liable to the sheriff on his indemnity bond.

Form of a judgment for the plaintiff in error on demurrer where other pleas to the whole action remain to be tried.

IN error from the District Court of Philadelphia.

*Dec.* 13, 15—*Jan.* 3. The plaintiff declared in debt for the penalty of a bond. On oyer, the condition set out recited a *fi. fa.* issued at the suit of C. Francis, tested on the 6th Sept., commanding the sheriff (plaintiff) to levy the sum of $12,875, &c., of the goods, &c., of J. P. Norris, "and whereas the sheriff has been notified that the goods levied on by virtue of said *fi. fa.* are not the property of defendant, but of J. R. Thompson *et al.*, now if C. Francis, &c., shall at all times save, keep harmless, and indemnify the sheriff and his officers for or by reason of his or their executing said writ, and attaching, and making sale, by force and virtue of said writ, of the personal property of any person, supposing them to be the property of defendant, then defendant would indemnify him," &c.

The defendant pleaded by his third plea that the sheriff did not at any time after the execution of said bond execute the writ of *fi. fa.* therein mentioned, and attach and make sale of the property of said Norris, or of any other person, &c., by force and virtue of said writ. The seventh plea was, that the only execution of the writ in the condition mentioned was upon certain goods there mentioned to be claimed by Thompson and others, which were sold by the sheriff for the price of $3290 59, which sum was never paid over to Francis, but was retained by the sheriff, and was to that extent an indemnity; and if he had been damnified beyond that sum, it was for a cause not within the terms of the condition of the bond.

The ninth plea was, that the only execution made of the writ was upon any surplus which might remain of certain goods after a prior writ of *fi. fa.* against said Norris, which had been previously levied by the sheriff on the goods as the property of Norris; and that there never was any surplus from said goods.

The tenth plea was similar to the seventh, adding that the excess of damage was from the unlawful and excessive conduct of the sheriff.

The replication to the third plea set out the delivery of the *fi. fa.* at the suit of Francis. That at Francis's request before the making of the bond, the sheriff had seized in execution, and was then in

possession of certain goods (particularly set forth in another plea) as being the goods of Norris, subject and liable to be taken in execution by virtue of said writ, which goods, before the making of said bond, had been claimed by Thompson, of which Francis had notice, and thereupon he delivered the obligation, &c. That after the making of said obligation, at request of Francis, by virtue of said *fi. fa.*, and of divers other writs against Norris then in his hands to be executed, he sold the goods, &c., for, &c., which goods were at that time the proper goods of Thompson, "which said sum the sheriff paid over and distributed according to law." He then averred a recovery by Thompson of $5575, in an action of trespass, for taking and carrying away the goods under and by virtue of said writ, which sum the sheriff was obliged to pay, as well as other money for expenses. That before the execution of said bond, the sheriff had in part executed the *fi. fa.* by attaching and levying the same upon the goods, supposing them to be the property of Norris, and after the execution of the bond he had completed the execution of the writ by selling the goods, &c., supposing, &c. To this defendant demurred, specially—1, because the issue tendered of an execution of the *fi. fa.* was not joined, but a breach of the condition of the bond was set out; 2, argumentativeness; 3, because it was ambiguous in not stating under which of the writs of *fi. fa.* the sale was made, nor what disposition was made of the money.

To the seventh plea, plaintiff replied: that after the said execution and sale he did not retain any part of the said proceeds, but paid the same to the plaintiff in a writ issued at the suit of one Baldwin, by which the sheriff had been commanded to levy $3479 upon the goods of Norris, which writ had been delivered to the sheriff before the *fi. fa.* mentioned in the plea, and remained in his hands to be executed at the time the other writ was to be executed, and that that money was no indemnity. The recovery, as stated above, was then set out, and the averment that the excess of damages was from his own wrong was traversed.

As to so much of this rejoinder as related to the sum of $3290 59, defendant demurred, and as to the residue joined issue.

To the ninth plea, plaintiff replied, that the execution of the writ was not upon any surplus, but that the goods were levied and sold by virtue of several writs of *fi. fa.*, of which Francis's was one. The recovery by Thompson was then averred as before, which loss was by reason of the premises in the condition mentioned. To this defendant demurred, and assigned certain defects in form; and that the replication only answered a part of the plea, while it professed to answer the whole.

The replication to the tenth plea, and the demurrer and rejoinder to the replication, were similar to those to the seventh, traversing the additional allegation. Besides these pleas, there were others going to the whole declaration on which issues of fact had been joined.

JONES, J., in giving judgment for the defendant on the demurrer, said: There was but one question in the cause—whether the plaintiff as sheriff *did execute the defendant's writ, and did attach and make sale of the goods mentioned in the bond according to the true intent and meaning of the condition.* The term *executing the writ* was the most comprehensive, and the others did not enlarge it. The cases upon the execution of a writ depriving the defendant of the title were inapplicable, for the question was, what was the plaintiff bound to do in order to execute the writ within the meaning of the condition ? The writ supplied the answer ; it was by levying the debt, if the goods were sufficient, and paying the money to the plaintiff in the execution, or bringing it into court upon his writ. The practice of bringing the money into court would not relieve him, if the goods belonged to a stranger ; for that he must look to his indemnity. But he must be careful to comply with the conditions, and not bring the money into court, or distribute it according to law, supposing them to belong to defendant when he is indemnified for executing a particular writ. If he pays over to one plaintiff, he executes that writ. To his security on that writ alone could he look, if the goods belonged to a stranger. In such case he must take a twofold indemnity ; first as to liability to a stranger who may be the owner ; second, to the prior execution creditors, if the goods belong to the defendant. On electing to execute one writ by paying the money on it, which is the most important part, he should return the prior writs *nulla bona.*

*Meredith,* for plaintiff in error.—The court considered the payment a necessary part of the sheriff's duty within the condition of the bond. But the words attaching and making sale, define the meaning of the previous words. The levying is a partial execution, and the sale perfects it. The return is a distinct matter. This the court conceded, in admitting that if the goods were not sufficient there was a complete performance. This construction necessarily involves the loss of the amount of the previous executions at the least, and renders the subsequent words of no effect.

Two positions show the fallacy—1. The sheriff on indemnity offered is bound to proceed: Nagle *v.* Stroh, 4 Watts, 124.

2d.  When he does proceed, he is bound to distribute to the creditors in the order of their executions : Girard Bank *v.* Philadelphia and Norristown Railroad, 2 Miles, 447.   There were three executions, and  the last indemnified, but the first was held entitled ; McCormick *v.* Miller, 3 Penna. Rep. 230.   It would be to require security against a false return on a prior writ, which would not þe tolerated.   The reasoning is based in a measure on the word *levied* —the proper word is *made :* Tid. Prac. 352, Appx. *Forms.*   It cannot be denied if the money was not made he would be entitled on the bond, and what distinction is there when the money is taken by a prior writ ?   Suppose costs merely were raised, or a landlord took all.   The whole object is that the sheriff will act as if the property were defendant's.   McClelland *v.* Slingluff, 7 Watts & Serg. 134, in conformity to the English cases, decides that a levy exclusively on the second writ entitles the prior creditor to the money; Drewe *v.* Lainson, 11 Ad. & Ell. 529, where it is said *executing* does not mean that the money shall be applicable to plaintiff's writ.   So in Shafner *v.* Gilmore, 3 Watts & Serg. 440, the prior writ took the money though the goods did not come into the bailiwick until after delivery to the sheriff, when they were seized under a second writ.   *Nulla bona* would be a good return to the second writ, where the money is taken by a prior creditor or landlord : Wintle *v.* Freeman, 11 Ad. & Ell. 539.   So in Jones *v.* Atherton, 7 Taunt. 56, the second execution binds from delivery subject to the prior writs.   Swain *v.* Morland, 1 Brod. & Bing. 370, is direct as to what is a complete execution.   The sheriff had received the money from a sale on a *fi. fa.,* when an extent issued which has priority to all writs *not executed,* and the creditor was held entitled.   It is said if there be indemnity the money cannot be brought into court : Sawle *v.* Paynter, 1 Dow. & Ry. 307 ; Goldschmidt *v.* Hamlet, 6 Man. & Grang. 187.   Is the sheriff not to be indemnified if the writ is set aside for fraud or other cause?   In no case can payment be the test.   The return proper is not payment, but that he has the money as he is commanded.

*H. D. Gilpin,* (*Tyson* was with him,) contrà.—If defendant is liable, he sustains an injury while the benefit goes to another, whom, for aught that appears, the sheriff does not choose to pursue.   If the sheriff executed the former writ, and he could do no more, he has not done the same with ours.   There are but two proper returns—*fieri feci* or *nulla bona.*   It was his duty, having used the proceeds in satisfying the former writ, to return there were no more

goods. The agreed rule that executions take according to their priority, shows that payment alone is complete execution; for a sale under Francis's writ accrues to the benefit of the prior creditor only. Not a case can be produced which holds any thing but payment to be an execution. Drewe v. Lainson decides in a like case that *nulla bona* is the proper return. Lord Denman says, "by executing is meant applying the proceeds." Swain v. Morland merely decided that the property passed from the defendant by a sale, not that the writ was executed as to plaintiff until all was done that could be demanded. Saul v. Paynter admits the point contended for, and Goldschmidt v. Hamlet was merely on a question of priority as to bankrupt assignees.

*F. W. Hubbell*, on the same side.—It is a mere question for decision by authorities—whether the second execution can be said to be executed in any sense within the meaning of the bond. 1. The same goods cannot be levied upon by more than one writ; *i. e.* in the positive sense of the term—what is ordinarily so styled is a different matter. 2. When the first writ exhausts the subject, the proper return is *nulla bona*. 3. Executing, in the sense of the bond, is seizing and selling goods, the proceeds of which, when realized, are applicable to that writ. 1st. The true mode of stating the rule appears to be, when the sheriff has but one writ a sale beyond the exigencies of that makes him a trespasser. When he has several, the second is his justification for such excess. It is under that writ he then begins to sell until he has satisfied it, and then the third comes in, and so on. If the first writ is set aside, the second by relation justifies him. It is only in the event of these contingencies, and on the surplus, that the subsequent writs operate. The cases show this: Wintle v. Chetwynd, 7 Dowl. P. C. 554, "it is impossible he can seize under two writs: one must have the priority." Heenan v. Evans, 1 Dow. N. C. 204; Chambers v. Coleman, 9 Dowl. P. C. 588, explain that remark—"true you cannot levy under two writs, but you may *contingently*. If the former exhausts the goods, you must return *nulla bona*." In 11 Ad. & Ell. 548, the explanation is to the same effect. 2d. *Nulla bona* is the proper return: as where the landlord takes the proceeds: Wintle v. Freeman. 3d. As between plaintiff and the sheriff, the meaning of execution is settled by a series of decisions: Drewe v. Lainson. The Chief Justice there, analyzing the declaration, says, "such must be the meaning of the averment—viz. raising money applicable to the writ." The sheriff was bound to do all he did do under the first

writ. If Francis had refused to give indemnity, and if that creditor had refused, he might have demanded indemnity against returning *nulla bona* to that writ. Then Francis would at least have had the benefit of the execution for which he is called upon exclusively to indemnify the sheriff.

*Williams*, in reply.—The facts of a levy previous to the bond, and of a sale at Francis's request, are admitted by the demurrers. The condition may mean three things, either as contended for by defendant—a levying and selling as argued by my colleague—or that the sheriff is to be indemnified for each step he takes under Francis's writ. By the last only is every word fulfilled—it is therefore the reasonable construction. It was the trespass in making the levy that was the ground of the recovery, and this levy the bond concedes was under Francis's writ. The recovery shows that more than sufficient to cover the former writs were seized, and Francis, knowing of that excess, gave the bond to take the chance of the surplus. Payment to plaintiff is never a part of the return; but *fieri feci et paratum habeo*: Wortman v. Conyngham, 1 Pet. C. C. R. 243; Zantzinger v. Old, 2 Dall. 265; 4 Watts, 124; 3 Watts & Serg. 438. The pleadings and return show that the seizure was under Francis's writ: McCormick v. Miller, 3 Penna. Rep. 234. No case can be stronger than that of the extent; and surely the meaning of *executed* will not be more strictly construed in an indemnity bond than against the crown. In the leading case of Meriton v. Stevens, Willes, 280, it is said if execution is begun before writ of error, the sheriff must go on and complete it—that is, sell and bring the money into court. What have we done to forfeit the indemnity? We could not pay it but in the order of the writs: Archb. Prac. 407; 1 Term Rep. 729. The agreement contended for to pay to Francis, would be a fraud on the other creditors.

*Jan.* 3. ROGERS, J., (after stating the case.)—The points raised on the special plea we are relieved from considering, as it is agreed that the only question on which the opinion of this court is desired, is whether there is any breach of the bond; that is, whether the plaintiff, as sheriff, did execute the writ, did attach and make sale of the goods, according to the true intent and meaning of the condition.

As it forms part of the case, I will premise that the fact that the goods were seized on the first writ, before the second was put

in the hands of the sheriff, that the action of the sheriff was partly before and partly after the date of the bond, is immaterial. For the execution of a writ, though it may consist of several acts, is but one thing in contemplation of law. It may be deemed to have been made after the date of the bond, if completed after that time. Otherwise, as is justly remarked, a bond given after a seizure of goods upon claim made by a stranger, would be no security to the sheriff, unless he begins his proceedings *de novo*, by making a new seizure. But this would be nugatory, for the law unquestionably is, that the receipt of a second execution, from the time it is endorsed by the sheriff, amounts to a re-seizure of the property on which the prior levy has been made. From that moment the goods are considered in his custody on all the executions. And from this it results that the consequence is the same, and, consequently, the question must be viewed in the same aspect as if the levy had been made on the writs in his hands, after the execution of the bond. In the latter case, it would be a trespass *eo instanti* the levy was made, and if made at his instance, the execution creditor would be liable with the sheriff at the suit of the person whose property was unlawfully taken. At the time the bond of indemnity was given, there were two executions in the hands of the sheriff; a levy had been made, and the goods of the defendant seized in satisfaction of the debts due on both. But, as before remarked, it is immaterial whether the seizure was made before or after the date of the bond. The law on which this case turns is well settled. Thus, in Jones *v.* Atherton, 7 Taunt. 56, it is ruled that though a sheriff makes a warrant and seizure of goods under a *fi. fa.* last delivered to him, yet the plaintiff in a *fi. fa.* first delivered, is entitled to be first satisfied out of the fruits of that seizure. And if a second *fi. fa.* be delivered to a sheriff after he has the defendant's goods in possession under the prior *fi. fa.*, the goods are bound by the second execution, subject to the first from the date of the delivery of the last writ. And that without warrant on the second writ or further seizure, McCormick *v.* Miller, 3 Penna. Rep. 234, is to the same point. But where, as in McClelland *v.* Slingluff, 7 Watts & Serg. 135, two executions are placed in the sheriff's hands at different times, and he makes a levy on the defendant's personal property, and a sale upon that which came to his hands last, he must appropriate the money to it, and not to the first upon which he had endorsed or attached no levy. But, although this be so, yet it is held in the same case, if two writs of *fi. fa.* are delivered on the same, or different days, the sheriff ought to execute that first which

was first delivered. If, however, either by mistake or design, he levy goods in execution by virtue of the writ last delivered, and make sale of them, the property in the goods is transferred by the sale, and the party cannot seize them by virtue of the writ first delivered, but he may have his remedy against the sheriff: Wats. on Shff. 176. The usual practice is to endorse the second writ, "levied subject to prior executions," and as the first levy enures to the benefit of the second, a formal levy is not required: *Lex neminem cogit ad vana seu impossibilia.* It is the duty of the sheriff to levy and sell the goods on all the executions, and to pay the proceeds in the order of date. The sheriff, it is true, has power to do otherwise. If he chooses to violate his duty, he does so at his peril; and when it appears that it is done with the design of favoring the second execution creditor at the expense of the first, it would present a case of such palpable disregard of duty, as would call, as I apprehend, at the hands of the jury, for exemplary damages. That a seizure in execution operates as a seizure under all the writs of *fi. fa.* then in the hands of the sheriff, is also decided in Wintle *v.* Freeman, 11 Ad. & Ell. 549, and Goldschmidt *v.* Hamlet, 6 Mann. & Gr. 190.

It is true that in Wintle *v.* Chetwynd, Mr. Justice Patteson is reported to have said that it was impossible to seize under two writs. But in this he was clearly mistaken, as he himself acknowledges in Wintle *v.* Freeman, 11 Ad. & Ell. 548. There may be many writs in the hands of the sheriff at the time of the seizure, and he seizes under them all. In contemplation of law, he is deemed (unless it appears to be clearly otherwise) to have seized, under the second writ, the same property that was seized under the first, and not merely the surplus from the time the second writ comes to his hands, or at any rate, from the time he endorses the seizure. That the levy is on the surplus only, is supported neither by reason nor authority; on the contrary, it is held that it is the same thing whether an execution is the first execution in point of fact, or whether it becomes a first execution by reason of a prior execution being superseded: The Prince's Case, 8 Rep. 1. So the second execution creditor becomes the first execution creditor, upon that execution which was *de facto* the first, being withdrawn: 1 Mann. & Gr., and 6 Mann. & Gr. 192. But this could not be if the levy was only on the surplus after paying the first execution. Here two writs were in the hands of the sheriff, on which a levy had been made in due form, and the sheriff was about to proceed and sell as he was commanded, when notice was given that the goods seized were not the goods of the defendant in the execution. The autho-

rities cited clearly indicate the duties of the sheriff, and it may shed some light on the question to inquire what were his rights. Under the circumstances of the case he is entitled to protection, as is ruled in Nagle v. Stroh, 4 Watts, 124. As he is bound to execute the writ at his peril, when there is a reasonable doubt whether the goods are liable to be taken on the *fi. fa.*, he may apply to the court from which the writ issues, and in a proper case the court will enlarge the time for making the return to the writ, *until the right be tried*, or a *sufficient indemnity be given*. But where he has received, or is tendered an indemnity, it is his duty to proceed, on pain of being attached or fixed for the debt. Now, what is the nature and extent of the indemnity which the sheriff has a right to demand, and that the court would, on a proper application being made, require from the execution creditor? Certainly, an indemnity commensurate with the risk he incurs from the performance of his official duty; that is to say, an indemnity for seizing and attaching the goods, an indemnity for selling them on the writ, and an indemnity for the complete execution of the writ. This he would have, undoubtedly, a right to demand, and unless given, the court would stay the proceedings. That he would be entitled to indemnity for seizing the goods, is plain; because, otherwise, when the execution is stayed, or no further steps taken in executing it, the sheriff would be without remedy for damages arising from the illegal seizure of the goods of a stranger. Here no application to the court was necessary, as the defendant, who was one of the execution creditors, complied with all he had the right to require; and the question is as to the extent of his liability upon the bond. The sheriff proceeded to sell the goods, at the instance of the defendant, for a sum less than the amount of the first execution, and applied the proceeds to that instead of the second execution. And this is the burden of his complaint, for the defendant contends that inasmuch as he received nothing, the avails of the sale being paid to the first execution, there is no breach of the agreement; but in this he is in error, because there was a breach of the condition *eo instanti* the trespass was committed, which consisted in seizing the goods of a stranger for the debt of the defendant in the execution. The defendant agrees to save, keep harmless, and indemnify the plaintiff, for and by reason of his executing his writ, and attaching and making sale by force and virtue of it. Now, what was the intention of the parties to the agreement? On this the question turns. The natural presumption is, that the sheriff intended to exact, and the defendant to give, a full

and complete indemnity against every risk incurred by the officer in the performance of his duty; and as the indemnity is in the usual form, we have no warrant for believing he intended to waive any of his rights. Directly the reverse is the most probable supposition. The inference is strong, that the defendant designed to indemnify him for attaching or seizing the goods, selling them in pursuance of the seizure; and, in short, for all the consequences arising from a partial or complete execution of the process in his hands. The authorities show, and for this purpose they are cited, that there was a breach of the condition, *ipso facto*, the goods of John R. Thompson were seized to pay the debt of Joseph P. Norris. From the moment of the levy, a trespass was committed, for which the sheriff and the defendant, at whose instance the goods were taken, were answerable. To save the sheriff from the consequences of an act which might eventually be proved to be unlawful, we cannot doubt, was one of the objects of the bond. If the goods are levied on, and afterwards delivered to the owner without further proceeding, the damages would, it is true, be nominal; but nevertheless it is a trespass, for which it would be unjust the sheriff should be answerable out of his own pocket. But if not only seized, but sold, it is a continuation and aggravation of a trespass already committed, for which the measure of damages would be the value of the goods; or, if the owner chooses, it would be the foundation of an action to recover the proceeds of sale, in assumpsit. But it is said that the term used in the condition, viz., executing said writ, is the most comprehensive. That attaching and making sale by force and virtue of said writ, does not enlarge the meaning of the condition, nor does it impose any duty not comprised in the former. This position constitutes the strength of the defendant's case. That we entertain a different opinion, may be seen from the remarks already made; but assuming the question to be as stated, let us view the case in this aspect. At the time the bond was given, both parties are procuring what one had a right to exact, and the other was bound to do, to secure the execution of his writ, viz., a full and complete indemnity against the consequences of the act he was compelled to perform, in the absence of any indication to the contrary. We cannot presume the sheriff intended to content himself with less; nor can we suppose the defendant designed to give less than the law required. And much less is there any thing in any part of this transaction which shows any thing like an agreement by the sheriff to violate his duty, by paying over the proceeds to the defendant, in fraud of the rights of the prior

creditor. That there was an express agreement to that effect, is not pretended. It is an inference, without the shadow of support. At the time the bond was given, it was known to the defendant, at least he had legal notice of it, that there was in the hands of the sheriff a prior execution, entitled to be first paid. The irresistible inference from this state of facts is, that he consented to run the risk of the goods being the property of the defendant in the execution; and, moreover, to incur the hazard that the property, when sold, would bring a sum sufficient to pay not only the first execution, but the whole, or at least part of his own debt. And this reasonable supposition is strengthened by the fact that the property seized (as afterwards appeared) was worth upwards of five thousand dollars, although it was suffered to be sold at a much less sum. That the defendant received nothing in payment of his debt, it is clear, was his own fault; for after entering into such an agreement, with a full knowledge of the prior execution, it was his duty, as well as interest, to see that the goods seized were not sacrificed at the sale. Under the circumstances in which he was placed, what was the sheriff to do? On the tender of indemnity, he was bound to execute the writ; so say all the authorities. It is also clear that the court will not stay the proceedings on the allegation, simply, that he has another execution in his hands, against which he is not indemnified. The answer to such an allegation would be,—that is nothing to you; you have a sufficient bond of indemnity, and it matters not by whom it is given, whether by the first or second execution creditor. You are not entitled to two indemnities. You cannot execute one writ without executing the other; the levy and sale on one is the levy and sale on both. It matters not by whom the indemnity is given, whether by the first or second execution creditor, by one or all, by separate or joint bonds. That must be left to be settled by the execution creditors among themselves. With their arrangements you have nothing to do. Had the defendant applied to the first execution creditor, it is very probable he would have joined in the bond, and agreed to share the responsibility. Had he refused, it would then have been for him to determine whether he would incur the whole risk himself. But with a knowledge of all the facts, he enters into a bond, by which he assumes the whole responsibility. Has, then, the sheriff done, or omitted to do any thing which exempts the defendant from refunding the loss which the plaintiff has sustained by the recovery of Thompson against him, is the next inquiry. It is strenuously contended that he has, because he has not executed

the defendant's writ, by returning the property sold or that writ, and paying the proceeds of sales on the second execution. That the plaintiff executed the defendant's writ in the most approved form, has been, and hereafter will be, more fully shown; so that the complaint is nothing more nor less than that he refused to violate his duty, by paying the money over to the second execution, to the detriment and manifest wrong of the first. The plaintiff assumes, that unless there is a complete execution of the writ, by payment of the money to his execution, there can be no recovery. But that there may be an execution of the writ, in legal parlance, although the money is not paid, nor a cent raised applicable to the execution, is abundantly shown by authority. Thus in Sawle v. Paynter, 1 Dow. & Ry. 307, the seizure and levy of the sheriff is treated as the execution of the writ. And in Goldschmidt v. Hamlet, 6 Mann. & Gr. 192, Cresswell, J., says, the general rule is, that an execution is executed by seizure. And in Swain v. Morland, 1 Brod. & Bing. 370, it is held, that the writ is executed when the goods are sold. In that case the goods had been seized under a *fi. fa.*, part were sold on Saturday, and the remainder on Monday, and an extent put into the sheriff's hands at six o'clock, after the goods sold had been delivered to the purchaser, and the money received by the sheriff; it was held, the execution was executed, and that the party which issued the *fi. fa.* might recover of the sheriff in an action for money had and received, the money levied under the sale. It was a contest between the crown and the plaintiff in the execution, and was ruled in favour of the latter, on the ground that, by the sale, the execution was executed, and the property changed. It is an authority directly to the point, that payment of the money to the execution creditor is not indispensable to the execution of the writ: that a writ may with propriety be said to be executed, without payment of the money over. The authorities cited clearly show that the term, "executing the writ," has no fixed, precise, legal signification, but that the interpretation must be referred to the subject-matter in controversy. That payment is not a *sine qua non* of the execution of the writ, is further evident from this, that by a *fi. fa.* which is a judicial writ, the sheriff is commanded to levy the debt, or damages, on the goods and chattels of the person against whom the recovery is had, and *bring the money and the writ before the court on the return-day.* He may, if he chooses to incur the risk, pay the money to the person entitled to it, but he is not bound to do so; he performs his duty by paying the money into court: Shafner v. Gilmore, 3 Watts & Serg. 438. That the de-

fendant receives nothing in payment of his execution will not re-
lieve him from his responsibility on his bond, in all cases, is mani-
fest from the authorities, and indeed has in effect been conceded in
the argument.   Thus, where 'there is one execution in the hands
of the sheriff, and the proceeds of sale pay the cost only, it is not
denied that the creditor will be liable on the bond of indemnity;
or when, as in Sawle *v.* Paynter, 1 Dow. & Ry. 307, the proceeds
are taken for the payment of rent, the law is the same.   And
so, in the case in hand, if the property had brought more than
was required to pay the first execution, leaving a surplus ap-
plicable to the second execution.   And yet it is difficult to see
the distinction, when the same effect is produced by a first exe-
cution being in his hands, and consequently first paid.   It is a dis-
tinction without a difference; the principle is the same.   What
then was the meaning of the parties to this contract?   To my mind
it is clear, when we consider all the attending circumstances, that
one had the right to ask, and the other was bound to concede, that
by the word *execute* the writ, was meant, levying and selling the
goods, paying the proceeds according to law, viz. into court, or to
the first execution creditor, and applying the surplus, if any, to the
payment of the plaintiff's debt.   These duties the sheriff performed
to the letter.   In nothing has he failed.   He levied on the plain-
tiff's writ, sold on his writ, and paid the money to the persons le-
gally entitled, as he was commanded.   It is not the less a levy and
sale, on the plaintiff's writ, that he had another writ in his hands,
for, as we have seen, he levies and sells on all the writs.   The fun-
damental error is in supposing that it was the duty of the sheriff
to sell exclusively on the writ of the defendant, whereas it is plain
he must sell, unless he chooses to violate his duty, on all the writs
in his hands.   This is a mistaken view of his duty, for it is not so
written in the bond, and there is nothing to indicate such inten-
tion.   And that this is the opinion of Lord Denman, is declared
in Drewe *v.* Lainson, 11 Ad. & Ell. 539.   The duty of a sheriff, where
he has several writs of execution, is clear: he is to execute them
according to their priority; which, as to writs of *fi. fa.*, is accord-
ing to the time of their delivery to him.   By "executing" is
meant, (in the language of the learned judge,) that he is to apply
the proceeds of goods seized in that manner.   It is not mate-
rial whether he seizes the goods under the first or last writ.   As
soon as they are seized, they are, in point of law, in his custody,
under all the writs which he then has, and when he sells, then he
sells, in point of law, under all the writs.   This is obviously so,

for if the proceeds are more than sufficient to satisfy the first, he must apply the surplus to the second, and so to the third and others; and as the amount for which the goods will sell is uncertain, he cannot be said to sell under the first writ only: *vide*, also, 2 Miles, 447, 3 Penna. Rep. 230. We cannot suppose that it was designed by the parties to indemnify the sheriff only, on condition that he violated the law; but this monstrous and startling proposition is the plain result of the defendant's argument. He contends that he only agreed to indemnify, provided the money, raised by the sale, was paid on his writ; but this, as we have seen, would be contrary to his duty, and had such a stipulation been inserted, it would, I apprehend, avoid the bond. For an agreement to indemnify a public officer, for a violation of his official duty, is simply void. This is a principle, I believe, without exception. It is said, that inasmuch as there was no surplus, the proper *return* to the plaintiff's writ was *nulla bona*. That a sheriff *may*, when the money raised will not reach the second execution, make such a return, may be conceded, but that he is *bound* to do so, I deny. Nor is it necessary to consider what effect would be produced by a return of *nulla bona*. It is enough that the sheriff made the usual and proper return; that he had levied upon the goods and chattels of the defendant, (subject to a prior levy, &c.,) and sold the same for $3290 58. As, then, the sheriff performed his duty, we are of opinion there has been no breach of the condition, and that he is entitled to indemnity from the defendants.

And now, to wit, this 3d day of January, in the year of our Lord one thousand eight hundred and forty-eight, come the parties aforesaid, and their attorneys, &c., whereupon as well the record and proceedings aforesaid, and the judgment aforesaid, in form aforesaid given, as the matter aforesaid, by the said John G. Watmough above, for error assigned being seen and by our said court now here fully understood, it appears to our said court that in the proceedings aforesaid, and also in giving the judgment aforesaid, there is manifest error; therefore, it is considered that the judgment aforesaid for the errors in the said record and proceedings be reversed and altogether held for nothing. And upon mature deliberation had, it appears to our said court here, that the pleas of the said plaintiff by him pleaded, by way of replication to the third, seventh, ninth, and tenth pleas of the said defendant, are sufficient for the said J. G. Watmough to

have and maintain his aforesaid action thereof against the said Charles Francis, wherefore it is considered that the said J. G. Watmough ought to recover judgment thereof against the said C. Francis. But forasmuch as it is unknown to our said court what damages the said J. G. Watmough hath sustained by means of the premises, or what judgment shall be finally given on the whole record, by reason of issues of fact therein yet remaining and undetermined, whereupon the record and proceedings of the said judges of the said District Court, before them had in the premises, are remitted by our said court here, and let a venire, &c., to the sheriff, &c., issue out of the said District Court, to summon a jury, &c., as well to try the several issues, whereupon the said C. Francis·hath put himself upon the country, as to inquire what damages the said J. G. Watmough hath sustained by reason of the said matters, whereof judgment hath been given against the said C. Francis, and thereupon let the said District Court proceed and give judgment as upon the whole record, shall be according to law.