## J. R. DIXON v. WHITE SEWING M. CO.

ERROR TO THE COURT OF COMMON PLEAS OF CUMBERLAND COUNTY.

Argued May 2, 1889—Decided October 7, 1889.

[To be reported.]

1. The common law requirements of a valid levy have not been relaxed in Pennsylvania, further than to hold that a levy, made in sight or within potential control of the goods, only, is valid, if followed up by actual possession taken within a reasonable time.
2. The interest of a debtor in goods bailed or demised by him may be taken in execution and sold as such, but a levy upon the goods bailed or demised themselves is a sufficient disturbance of the bailee's possession to constitute a trespass, though the goods be not actually taken.
3. To maintain trespass for a mere levy upon the goods of a stranger, the plaintiff must have had, at the time of the levy, either actual possession or the right to take possession; but, for a sale of the goods, an action may be supported upon a reversionary or conditional right of possession.
4. If goods levied upon be claimed by a stranger, the sheriff may either abandon the levy or restrict it to defendant's interest, and may correspondingly alter his levy, the return which he shall make being within his own control, provided it be appropriate in form and sufficient in law.
5. This control of the sheriff over his return continues even after the return day, so long as the writ remains in his hands, and until the final act of filing it in court; but delay in filing it until after lis mota takes away the presumption in the sheriff's favor to which ordinarily the return is entitled.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 156 January Term 1889, Sup. Ct.; court below, No. 19 February Term 1888, C. P.

On November 18, 1887, the White Sewing Machine Company brought trespass against James R. Dixon, sheriff of Cumber-

land county, to recover damages for the alleged seizure and sale by the defendant of three organs, belonging to the plaintiff, under a writ of fieri facias issued against William H. Dinkle. The defendant's plea was not guilty.

At the trial on November 23, 1888, the following facts were shown:

William H. Dinkle was a dealer in pianos, organs and sewing machines, doing business in Carlisle. He sold organs usually on the instalment plan, upon written contracts drawn in the form of a lease providing for a monthly payment as a rental, with a clause of forfeiture for non-payment. On July 29, 1885, three organs, which were the subject of this suit, were in the hands of persons who had purchased them in this manner, and on that day Dinkle, being indebted to the White Sewing Machine Company, executed a paper whereby he transferred to said company, as collateral security for said indebtedness, inter alia, his interest in the three rental contracts or leases which had been entered into between himself and the respective purchasers of said organs. No notice of this transfer was given to the lessees. Dinkle agreed, at the time, to collect the instalments payable upon the contracts and turn them over to the company, to be applied by it on his indebtedness. He did collect and pay over some of the instalments. At different times during the year 1886 these three organs were returned to him by the lessees thereof, the rental contracts being canceled, and were placed in his store, where they had been before the contracts were entered into. Upon his subsequently removing to another store-room, they were taken there along with the other goods which he had in stock.

In March, 1887, Dinkle was visited by an agent of the sewing machine company, with whom, after some negotiation, an agreement was made that he was to retain these organs in his charge, and act as the agent of the company in the care and disposition of them.*   In May, 1887, Dinkle rented one of them

---

* A considerable part of the testimony and charge of the court below, and the greater number of the specifications of error, related to a controversy as to whether the assignments of the original leases of these organs passed to the plaintiff company any title to the organs themselves; whether his transfer to the plaintiff company was valid against creditors, and whether the New England Organ Company was such a creditor as could question the validity of such transfer.

to Mrs. Shreffler of Newville, another to Mrs. Wetzel of Carlisle, and placed the third on trial with Miss Getter of Newville.

On August 23, 1887, the organs being still in the possession of these three bailees, the New England Organ Company recovered two judgments against Dinkle. Writs of fieri facias were issued on these judgments the same day and delivered to the defendant as the sheriff of said county, who thereupon went to the residences of Mrs. Shreffler and Miss Getter, at Newville, made a memorandum of the numbers of the organs in their possession, and informed them that the same were levied on as the property of Dinkle. This was done in view of the organs, but the defendant did not touch them, and left them in the possession of the bailees. Upon his return to his office, his deputy indorséd on the writs a levy upon these two organs. On the same day the deputy went to the residence of Mrs. Wetzel, in Carlisle, and there levied on the defendant's interest in the organ which had been leased to her, leaving it in her possession. This levy was indorsed upon the writs as it was made. The sale bills put up by the sheriff followed the levies as originally made, advertising the sale of the two organs in the possession of Mrs. Shreffler and Miss Getter, and the defendant's interest in the organ in the possession of Mrs. Wetzel.

After these advertisements had been posted, the sewing machine company notified the sheriff that it claimed the three organs as its property. Thereupon, without going back to Newville to make a new levy, the sheriff simply changed the indorsements on the writs so as to restrict the levies to the interest of the defendant in the two organs originally levied on without such restriction. No notice of this alteration was given to the bailees of the organs. On November 2, 1887, a sale under these writs, conducted by the under-sheriff, took place on the pavement in front of Dinkle's store in Carlisle. When the organs were offered, the under-sheriff announced that only the interest of Dinkle in them was to be sold. The organs themselves were not there, being still in the possession of the persons who held them at the date of the levies. The New England Organ Company thereupon became the purchaser of Dinkle's interest in them. Possession of the organs was not delivered to it by the sheriff.

At the time of this sale there was attached to one of the

writs of execution against Dinkle, then in the hands of the sheriff, a return of certain sales of personal property which had previously been made under them. The writs remained unreturned and in the sheriff's hands until the trial of this case. A few days before the trial, the return already written was detached and a new return, embracing all the sales made under these writs, was prepared. As to the organs in question, this return showed that only the interest of Dinkle therein was sold. It was read in court and filed with the prothonotary during the trial.

At the conclusion of the testimony the court, SADLER, P. J., charged the jury, in part, as follows:

[The defendant offered in evidence the return which the sheriff had appended to fieri facias 25 of August Term, 1887, for the purpose of showing the levy and sale. The correctness of this return was denied, and it is insisted that the testimony clearly establishes that the organs at Newville were levied upon as the property of Dinkle without any qualification; that is, that the organs were levied upon, and not merely any interest he might have in them.] [17] It is also contended by the defendant that no actual seizure was ever made of the property in dispute, and hence no trespass was committed by the sheriff, and no damages suffered by the plaintiff at his hands.

[The law, as we understand it to be, is that a wrongful levy, without the removal of the property or interfering with it in any way, will make the officer a trespasser; and, while an officer may levy upon the interest of a debtor in personal property in which another has an interest, yet if he levies upon and advertises for sale the entire property in the goods, he will become a trespasser.] [18] [Now, we are of the opinion that if Dinkle made the conditional sales . . . . . as evidenced by the contracts presented to you, and in good faith and without any intent to hinder, delay or defraud creditors, assigned them to the White Sewing Machine Company on July 29, 1885, and they were in the spring and summer of 1886 returned to him at his store in the Gill house on North Hanover street, without any understanding with the Sewing Machine Company, and he treated them as in his custody for them and to secure their indebtedness, . . . . and subsequently he removed

them to the store on Main Street; and that while there, in March, 1887, an agent of the White Sewing Machine Com-. pany visited him, and the organs were pointed out to him, that is, to Johnson, and an arrangement was then made by which Dinkle was to act as the agent of the company in caring for them and in the disposition of them, in good faith, and without any intent to hinder, delay or defraud creditors; and that he afterwards removed them to the store-room in Noble's property on North Hanover street, without any understanding with the White Sewing Machine Company, and subsequently he rented one to Mrs. Wetzel, one to Mrs. Shreffler, and also gave one to Miss Getter on trial, with the option to purchase it, as agent of the aforesaid White Sewing Machine Company, and in pursuance of these contracts the organs had been delivered to and were in the possession of the said parties in Carlisle and New-ville, the White Sewing Machine Co. had such property in them as mortgagees or pledgees as gave them the right to hold them without disturbance from any one; and, if on an execution subsequently issued, the sheriff levied on and advertised for sale the organs in the possession of Miss Getter and Mrs. Shreffler as absolutely belonging to Dinkle, as contended by the plaintiff, and subsequently sold them or their interest in them, the defendant would be liable to the plaintiff for any damage which has been shown by the evidence in the case has been suffered by him.] [19] . . . . .

Under the 23d section of the act of June 16, 1836, P. L. 761, relating to executions, it is provided that "goods or chattels of the defendant in any writ of fieri facias, which shall have been pawned or pledged by him as security for any debt or liability, or which have been demised, or in any manner delivered or bailed for a term, shall be liable to sale, upon execution as aforesaid, subject, nevertheless, to all and singular, the rights and interests of the pawnee, bailee or lessee to the possession or otherwise of such chattels or goods by reason of such pledge, demise or bailment." As it is undisputed that only the interest of Dinkle was levied upon in the organ in the possession of Mrs. Wetzel, there can be no recovery against the defendant for that organ, in our opinion. ·

\*    \*    \*    \*    \*    \*    \*    \*

The plaintiff requests the court to charge [inter alia]:

1. That the contracts, as shown by exhibits 28, 34 and 42, put the possession of the organs in controversy in this case out of W. H. Dinkle, and he could not, so long as the conditions of those contracts were complied with, regain possession of them, and the possession of the same was out of said Dinkle on July 29, 1885.

Answer: We affirm this point. When the parties named purchased the organs, Dinkle could not regain them unless they failed to comply with their contracts.

6. That the uncontradicted evidence in the case is that the organ found in the possession of Cora Getter was placed there by W. H. Dinkle as agent of the White Sewing Machine Co. on trial, and if the jury so find, then the levy upon it by the sheriff as testified to by him, was a trespass for which he is liable in this case to the plaintiff for the value of the organ, with interest from November 2, 1887, notwithstanding the fact that at the sale the sheriff only sold the interest of W. H. Dinkle therein.

Answer: If the organ was held by the plaintiff, as contended for on its part in the trial of this case, the possession of the organ by Miss Getter, under the arrangement testified to by Dinkle, would not render it liable to be seized and taken in execution and sold to satisfy the creditors of W. H. Dinkle. We are of the opinion as already stated, that the interest of Dinkle might have been lawfully levied upon and sold, under the testimony in this case, if no rights of the Sewing Machine Co. were impinged upon. In case you find that the property was held in good faith by the White Sewing Machine Co. to secure indebtedness of Dinkle, as contended for by the plaintiff, and if the sheriff levied upon the organ and advertised it for sale without limiting his acts to the interest of Dinkle, the plaintiff may recover the damages shown to have been suffered by the acts of the sheriff, and the amount would properly bear interest from November 2, 1887; and in arriving at the amount of these damages it is proper to take into consideration what the organs were reasonably worth in the market.[5]

7. That the organ in the possession of Mary E. Shreffler, under a rental contract, with the privilege to her to buy upon payment of its value, signed by W. H. Dinkle, agent, was not thereby put out of the ownership of the White Sewing Machine

Charge of Court below.

Co. and liable to seizure on execution by creditors of W. H. Dinkle, and the levy upon it by the sheriff, as testified to by him, was a trespass for which he is liable in this case for the value of the organ, with interest from November 2, 1887, notwithstanding the fact that at the sale the sheriff sold only the interest of W. H. Dinkle therein.

Answer: If the organ was held, as contended for on behalf of the plaintiff in the trial of the case, the contract with Mrs. Shreffler would not render it, the organ, liable to be seized and taken in execution and sold to satisfy the execution creditors of W. H. Dinkle. We are of opinion, as already expressed, that the interest of Dinkle might have been properly levied upon and sold if no rights of the Sewing Machine Co. were disturbed. In case, then, you find that the property was held in good faith by the Sewing Machine Company to secure the indebtedness of Dinkle, as contended for by the plaintiff, and if the sheriff levied upon the organ, advertised it for sale, without limiting his acts to the interest of Dinkle, the plaintiff may recover from the defendant the amount of damages which it has shown to have suffered, and these would properly bear interest from November 2, 1887; and in arriving at the amount of damages it is proper for you to take into consideration what the organ was reasonably worth in the market at that time.[6]

The defendant has also presented certain points. The first one is:

1. On all the evidence the verdict should be for the defendant.
Answer: This is refused.[7]

6. The evidence shows that only the interest of Dinkle in the three organs in dispute was sold, and that at the time of such sale the chattels were in the possession of parties who had a right to the possession, and not in that of the plaintiff; nor does it appear that the right of possession was in plaintiff, and as the sheriff did not touch the chattels, nor authorize nor direct others to do so, there was no injury to plaintiff for which it can recover.

Answer: Under the testimony in this case we cannot affirm this point as presented. It is therefore refused.[12]

The verdict of the jury was in favor of the plaintiff for the sum of $102.50. Judgment having been entered thereon, the defendant took this writ, assigning for error:

5, 6. The answers to plaintiff's points.[5] [6]

7, 12. The answers to defendant's points.[7] [12]

17–19. The parts of the charge embraced in [ ] [17 to 19]

*Mr. S. Hepburn, Jr.* (with him *Mr. J. W. Wetzel* and *Mr. S. Hepburn*), for the plaintiff in error:

Both the bailees of the organs and the sheriff were ignorant of the plaintiff's claim of ownership. Upon receiving notice of this claim, the sheriff did all that he could do to protect it by making an entry restricting the levy to Dinkle's interest. It would have been useless to go back to the bailees who knew nothing of the plaintiff and made no claim of ownership themselves, and tell them he was going to sell only Dinkle's interest. The defendant had a right to do as he did, or he might have returned nulla bona: Patterson v. Anderson, 40 Pa. 359. The instructions of the court below would make him liable, whichever course he took, to the same extent as if he had sold the property outright. If the sheriff had made return that he had levied on the organs and sold them, without mentioning any restriction, he would be liable under Welsh v. Bell, 32 Pa. 12, because his return would conclude him as to actual manucaption. But here the return restricted the levy and sale to Dinkle's interest, and the levy on the organs as originally made, not being accompanied nor followed in a reasonable time by manucaption, amounted to nothing: Schuylkill Co.'s App., 30 Pa. 359; Welsh v. Joy, 13 Pick. 477. The rule laid down as to damages is wrong; the good faith of the sheriff should be considered: Murfree on Sheriffs, § 960; Brydges v. Walford, 2 Stark. 291, note.

*Mr. John Hays* (with him *Mr. R. M. Henderson*), for the defendant in error:

The levy made by the defendant on the organs, at the houses of Mrs. Shreffler and Miss Getter, was a good levy and constituted him a trespasser: Wood v. Vanarsdale, 3 R. 401; Welsh v. Bell, 32 Pa. 12. Under the evidence, in view of the two authorities just cited, the defendant's sixth point, asking an instruction that the sale passed only Dinkle's interest in these two organs, was properly refused. The new return of the sheriff was not written till more than a year after the return

day of the writ. It was therefore not conclusive: Weidman v. Weitzel, 13 S. & R. 96. It was false, and could not be used to protect the sheriff. The instructions as to the measure of damages were proper. The decision of this court in McAlevy v. McElroy, 12 Cent. R. 540, is conclusive upon this point in our favor.

OPINION, MR. JUSTICE MITCHELL:

The common law requirement of a valid levy that the sheriff shall take actual possession of the goods, has been relaxed in Pennsylvania to a degree that has been regretted by the judges of this court: Cowden v. Brady, 8 S. & R. 510; Schuylkill County's App., 30 Pa. 359; but none of the cases have gone further than to hold that a levy in sight or within potential control of the goods will be valid only when followed up by actual possession within a reasonable time: Cowden v. Brady, 8 S. & R. 510; Commonwealth v. Stremback, 3 R. 345; Commonwealth v. Contner, 18 Pa. 445; Schuylkill County's App., 30 Pa. 358; Welsh v. Bell, 32 Pa. 12. The levy in the present case, therefore, could scarcely be considered a perfected levy, if it had maintained its initial character as a levy on the organs themselves in the possession of the contract vendees. But there are cases which hold that it was a sufficient interference with the possession of the owner to support an action of trespass: Paxton v. Steckel, 2 Pa. 93. "A levy on the goods of a stranger to the execution is an exercise of dominion over them sufficient to constitute a trespass, though there be no actual taking of the goods — though they be not touched. . . . . If the debtor have bailed or demised the goods, his interest may be seized and sold, . . . . but the possession of the bailee may not be disturbed. A levy on the thing itself disturbs the possession, and is a trespass:" Welsh v. Bell, 32 Pa. 16.

But it is the person whose possession is disturbed to whom the right of action accrues. "To maintain trespass it is absolutely necessary that plaintiff must be in actual possession, or have the right of taking possession at the time of the trespass:" Ward v. Taylor, 1 Pa. 238. Thus, in Srodes v. Caven, 3 W. 258, the action was by the bailee for taking from him property which he had hired, and Welsh v. Bell, already cited, was supported expressly on the ground that the jury found the plaintiff had not parted with the possession.

Tested by these principles, the original levy, though upon the organs themselves, gave plaintiff no cause of action. Whatever the plaintiff company's title might have been, it is clear that it had no right of possession at the time of the levy, or at any time before the sheriff's sale. The organs had been sold by Dinkle, and delivered to the purchasers upon contracts for payment in instalments. There is no evidence, nor is it claimed, that any instalments were due and unpaid, or that either Dinkle or the plaintiff had any right of resuming possession in the absence of default in the payments. So far as the evidence shows, even the purchasers could not have claimed anything more than nominal damages: Watmough v. Francis, 7 Pa. 216, and plaintiff had no ground of complaint at all.

But Dinkle, either for himself or as agent of plaintiff, had still a title in the organs, to which a reversionary and conditional right of possession attached, and a sale of the goods themselves by the sheriff would be such an interference with this title and consequent right of possession as would support an action. Assuming, therefore, for the present, that plaintiff's title through Dinkle was valid, we have to consider the right of the sheriff to change his levy, and the steps he took in doing so.

The general right of the sheriff to change his levy, to enlarge, or restrict, or abandon it, is unquestionable. Having made a mistake, he is not bound to persevere in it. If he withdraws or abandons the levy, it is absolutely discharged, even though his action was improper and he thereby became liable to the plaintiff in the execution: Commonwealth v. Contner, 18 Pa. 445. And, having levied on goods themselves, he may upon claim by another either abandon it, or restrict it to the defendant's interest: Patterson v. Anderson, 40 Pa. 363. This is what the sheriff did in the present case. When he made the levy he does not seem to have been aware of plaintiff's interest in the organs, and he accordingly levied on them as the property of Dinkle. On being informed of plaintiff's claim, he changed his levy by reducing it to Dinkle's interest in the organs. It is true he did not notify the purchasers in possession of this change, but they are not here complaining of omission, and as already seen they are the only ones whose rights were interfered with by the levy itself in either form.

In accordance with his action in changing the character of

the levy, the sheriff also changed his return. His right to do so is equally beyond question. The effect of so doing is another matter. The sheriff, as the executive officer of the court, is charged with the duty of making return to the mandates of its writs, but what return he shall make is within his own control. The court cannot dictate what it shall be: Vastine v. Fury, 2 S. & R. 426; Maris v. Schermerhorn, 3 Wh. 13. . It can only require that it shall be in form appropriate to the writ, and as matter of law sufficient. And this control of the sheriff lasts as long as the writ is in his hands. The right to alter his levy as affirmed in Patterson v. Anderson, supra, necessarily carries with it the right to make a corresponding alteration in his return, if it should happen to be previously written. In Schuylkill County's App., 30 Pa. 358, it is reported that the sheriff " made return," and afterwards, but before return-day, made a new levy, sale, and new return. Whether the expression " made return," means that the writ was actually returned into the court office is doubtful, but until such actual return the right of the sheriff to alter his indorsement on the writ is beyond question. It is the final act of filing it in court that fixes his official return.

In the present case the return was not changed on the back of the writ until long after the return-day, and after the commencement of this action, and was not actually filed in court until the day of trial. This, however, was but an irregularity. In Mentz v. Hamman, 5 Wh. 154, it is said that " the sheriff is not obliged, unless ruled so to do, to make a return to a writ of fieri facias; " and while this is meant, probably, as a statement of the practice rather than of the law, it is sufficient to show that the delay does not lessen the sheriff's control over his return, so long as the writ actually remains in his hands. The effect of delaying the return until post litem motam is to take away the presumption to which it is ordinarily entitled in the sheriff's favor.

The change therefore in the levy and the return being within the sheriff's privilege, and being made under circumstances which gave the plaintiff no right to complain, we have left only the sale, and this it is quite clear was of Dinkle's interest only. The testimony of Dinkle on this point is somewhat confused, but tends rather towards a sale of his interest only, and the

same may be said of the testimony of the sheriff himself; for, although he says in a general way that the organs were sold, he also says that his return will show precisely what was done, and that the sale was held by the under-sheriff, it not appearing that the sheriff himself was even present at all. But the testimony of Spencer, the deputy-sheriff who made the sale, is conclusive that only the interest of Dinkle was sold.

It being thus clear that plaintiff below had no present right of possession which could be disturbed by the levy, and the sale being only of Dinkle's interest, did not interfere with plaintiff's title, whatever it was, it follows that, under the evidence, plaintiff had no cause of action, and defendant's sixth point should have been affirmed.

As this is decisive of the whole controversy it is not necessary to consider the other questions raised.

Judgment reversed.