## McMarlan *versus* English.

1. Where the transfer of possession of chattels corresponds with the nature of the property sold and the relation of the parties, the sale will be valid unless fraudulent in fact.

2. Where there has been an actual and continued change of possession the court cannot pronounce the sale fraudulent in law.

3. The separation of the property from the possession of the vendor must be at the time of sale or a reasonable time afterwards: and may be made by surrendering the power over it to the vendee.

4. The question of fraudulent sale under the facts in this case for the jury.

5. Billingsley *v.* White, 9 P. F. Smith 464; McKibben *v.* Martin, 14 P. F. Smith 352, recognised.

October 17th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the District Court of *Allegheny county*: No. 11, to October and November Term 1873.

This was a feigned issue, under the Sheriff's Interpleader Law, in which Hugh C. English was claimant and plaintiff and William D. McMarlan defendant.   The issue was formed March 17th 1873.   The goods in controversy were seized under an execution, issued January 8th 1873 by McMarlan against Andrew B. English, who was a brother of the claimant.

The cause was tried May 12th 1873, before Hampton, P. J.

The plaintiff testified that he had been store-keeping since April 1st 1872.   He purchased the store from A. B. English, on the Saturday before the 1st of April; they commenced taking stock on the 1st of April; made an invoice of everything about the store. It was signed by Andrew a short time afterwards.   Andrew owed rent and a bill of goods to A. Craig, which plaintiff paid.   He paid in cash $180.70; also a note for Andrew's debt to Spencer & Willison for $125, which he paid; also a note due by Andrew to Campbell & Co., for $206; and to close the account, plaintiff gave Andrew a note for $117.04, which he afterwards paid. Plaintiff paid "the purchase-money in full for everything."

The "invoice" was in the form of a bill, and was given in evidence.   It was dated April 1st 1872, and headed "Hugh C. English bought of A. B. English."   It amounted to $644.44.   At the bottom was written:—

"The above invoice of stock is settled in full to the above dates.
                                        "ANDREW B. ENGLISH.
"Witness present—JOHN ENGLISH."

The plaintiff gave in evidence his own note for $117.06; note to Campbell & Co. and note to Spencer & Willison.   Plaintiff did all the buying at the store after April 1st 1872.   Andrew and his wife assisted in making out the invoice.   The invoice was six or eight weeks after the invoice was made out.   All the goods in the

[McMarlan v. English.]

store levied on, except some old goods, had been purchased by plaintiff since April 1st 1872. The goods were purchased, sold and removed in the ordinary course of business.

Elizabeth English, wife of Andrew, testified, corroborating the plaintiff's statement as to invoice, &c.; also as to the possession by him since April 1st 1872, and that her husband had had no interest in the store since that time.

Joseph Craig testified that the plaintiff had paid him a claim which Andrew owed him; also that plaintiff had been conducting the store since April 1st 1872, and had been dealing in his own name with plaintiff.

Other witnesses testified that the business at the store had been conducted by plaintiff since April 1st 1872.

The defendant testified that Andrew had had the store in his possession for two years or more before it had been transferred to plaintiff. Plaintiff was there through 1871; was there as often as Andrew, who was about the store attending it. The defendant saw no change in the management after April 1st 1872. He saw Andrew there. Plaintiff said he had paid $370 for the store. Andrew lived up to June in the house in which the store was. The evidence was that after May or June 1872, Andrew moved with his family to his father's house, about four miles distant from the store.

George Wallace testified that there never had been any sign at the store. Andrew lived over the store from April 1st till about May. In going from the kitchen up stairs they had to pass through the store. Andrew moved away about May 1872.

There was similar evidence as to Andrew living in the same building in which the store was; as to Andrew being engaged about the store after the sale as before; evidence of the plaintiff's want of means, and other facts, for the purpose of showing that the sale was colorable and fraudulent.

The defendant submitted eight points, amongst which were the following, with their answers:—

1. The evidence shows that there was not such a delivery of the possession of the property in dispute as the law requires, and the jury must therefore find for the defendant.

The answer was: "The court refuses to affirm this point, but submit the question to the jury to determine from all the evidence, whether this was an honest, fair and bonâ fide sale, or whether it was made for the purpose of hindering, delaying or defrauding Andrew's creditors. If it was so made, the plaintiff cannot recover, and your verdict should be for the defendant. But if it was fair and honest, and not made for the purpose of hindering, delaying and defrauding the creditors of Andrew, then the plaintiff would be entitled to your verdict."

[McMarlan *v.* English.]

2. In this case the plaintiff must satisfy the jury that the sale in question was honestly made, and that it was founded on a valuable consideration, and if he has failed so to satisfy you, your verdict should be for the defendant.

The answer was: " This point is sufficiently answered in our answer to the first point."

3. If Andrew B. English sold the property in question to Hugh C. English, and then remained with his wife for some time thereafter in the store, helping in the business of the store as they had done before, the sale was fraudulent as against creditors, and your verdict should be for the defendant.

The answer was: " It is settled law that a voluntary sale of chattels must be accompanied by an actual change of possession. * * * A merely formal or constructive delivery will not defeat an execution. When such delivery does not attend a sale, it is fraudulent."

4. Unless the evidence satisfies you that the sale was not made to hinder, delay or defraud the creditors of Andrew B. English, your verdict should be for the defendant.

The answer was: " This point is affirmed with this addition, that the party who alleges fraud must prove it."

5. If the sale was an honest one, the evidence must satisfy you that there was an actual, open, notorious delivery of the possession of the property by the vendor to the vendee, and that that possession was continued by Hugh, exclusive in him and not concurrent with Andrew.

The answer was: " The possession under a sale of personal property must be as complete, actual and exclusive, as the nature and situation of the property will permit. And if there is not such a delivery, it is such evidence as the jury may take into their consideration in determining the question whether the sale was fraudulent or not."

The verdict was for the plaintiff.

The defendant on a writ of error sued out by him assigned the answers to the foregoing points for error.

*A. Blakeley*, for plaintiff in error.—Under the evidence the court should have decided as matter of law that the sale was fraudulent: McKibbin *v.* Martin, 14 P. F. Smith 352 ; Bentz *v.* Rockey, 19 Id. 77 ; Miller *v.* Garman, Id. 134 ; Redfield & Rice Manufacturing Company *v.* Dysart, 12 Id. 62.

*J. W. Kirker*, for defendant in error.—The facts in this case presented the question whether there was *actual* fraud in the sale, —this was a question for the jury : Dornick *v.* Reichenback, 10 S. & R. 90 ; McKibbin *v.* Martin, 14 P. F. Smith 356. Whether the

change of possession is actual and bonâ fide is for the jury:
McVicker v. May, 3 Barr 224; Forsyth v. Matthews, 2 Harris
100; Hugus v. Robinson, 12 Id. 9; Dunlap v. Bournonville, 2
Casey 72; Bastian v. Dougherty, 3 Phila. R. 30.

The opinion of the court was delivered, November 22d 1873, by
MERCUR, J.—About the 1st of April 1872, Hugh C. English
purchased and took possession of the property in question.   It
consisted mainly of a small stock of goods.   He continued in
possession thereof down to the time they were levied upon as the
property of Andrew B. English.   That levy was made March 7th
1873.   The plaintiff in error, however, claims that Andrew re-
tained a concurrent possession with Hugh until about the 1st of
June 1872.   There is some evidence to sustain that allegation.
It is shown that in the months of April and May 1872, Andrew
and his wife were occasionally in the store, and sold a few goods to
customers.

An explanation was given of these acts, which otherwise might
have been stronger evidence of Andrew's concurrent possession.
Before and at the time of the sale Andrew resided, with his family,
in a part of the same building in which the stock of goods was
kept.   Hugh was unmarried, and during the winter previous to
the sale made his home with Andrew, and occasionally assisted in
the store.   Andrew continued to reside in the house until some
time toward the latter part of May 1872.   In going from the
kitchen to other rooms which he occupied as his dwelling, it was
necessary to pass through the store-room.   As Hugh had assisted
while Andrew owned the goods, so Andrew assisted after Hugh
purchased them.   After Hugh's purchase he claimed and exercised
exclusive ownership over the property.   He held himself out to
the world as the sole owner.   He replenished the stock from time
to time.   Andrew did not act, and made no claim inconsistent
with Hugh's right and possession.   Nevertheless, if the execution
had been issued while Andrew continued to reside in the building,
the case would not have been entirely clear of difficulty, and the
concurrent possession should have been submitted to the jury.
It is well settled where the transfer of possession corresponds
with the sale and the nature of the property sold, and the relations
of the parties, the sale will be valid unless fraudulent in fact.
Hence it was held where two brothers in failing circumstances sold
the stock in trade of a coach manufactory to a third brother, who
went into possession, and the two vendors remained in his employ,
superintending a particular part of the work for wages, that there
was such a change of possession as to make it improper to decree
the sale a fraud, as matter of law: Dunlap v. Bournonville, 2
Casey 72.   Where there has been an actual and continued change
of possession, the court cannot pronounce the sale fraudulent in

law. The vendor must make such an actual delivery only as the nature of the property and circumstances of the case will reasonably admit. The separation of the property from the possession of the vendor must be at the time of the sale, or within a reasonable time afterwards. That separation may be made by the vendor's surrender and transfer of his power and control over it to the vendee : Billingsley *v.* White *et al.*, 9 P. F. Smith 464. In this case just cited one of the vendors continued in the store as a clerk, yet it was held that the sale was not fraudulent in law. The same doctrine was recognised in McKibben *v.* Martin, 14 P. F. Smith 352.

Whether Hugh had such an exclusive possession in April or May 1872, as to make his purchase good against creditors of his vendor, does not control this case. The evidence is uncontradicted, that in May, Andrew moved away, and to a house some four miles therefrom, and was not again in the store, before the levy was made. So in fact Andrew had no possession or color of possession for more than nine months previous to the property being seized in execution.

It may be conceded that the learned judge erred in his answer covered by the fifth assignment of error. The first part of the answer is correct. The latter part is not responsive to the point. It fails to discriminate between fraud in law and fraud in fact. We have shown, however, that the facts would not have sustained a verdict on the ground of fraud in law. The facts would not admit of the application of the rules of law prayed for. Hence we will not reverse for an answer which caused the plaintiff in error no injury : Childs *et al. v.* Digby, 12 Harris 23 ; Deakers *v.* Temple *et al.*, 5 Wright 234. We discover no other error in the record, therefore judgment affirmed.