# Buckley *versus* Duff & Sons.

1. Where the sale of personal property, reasonably susceptible of delivery, is not accompanied by a transfer of the actual possession, although valid and binding as between the parties, it is a fraud *per se* as to creditors and *bona fide* subsequent purchasers, without regard to the intent of the parties; and the question, where the facts are established, is for the court and not for the jury.

2. In the sale of personal property, regard must be had, not only to the character of the property, but to the nature of the transaction, the position of the parties, and the intended use of the property. No such change of possession as will defeat the fair and honest object of the parties is required.

3. In a sale of personal property, not reasonably capable of actual delivery, it is only necessary that the vendee should assume the control of the property so as reasonably to indicate to all concerned the fact of the change of ownership.

4. A transfer of personal property, void as to existing creditors, is not necessarily void as to subsequent creditors. It is fraudulent only as to those it was intended to defraud.

5. A sale of personal property, not fraudulent as to existing creditors, subsequent creditors can avoid only under special circumstances; as by showing that it was made with a view to incurring liabilities, or to provide against the contingencies of a hazardous business, which gave rise to their debts; and cases of this character are ordinarily under proper instructions for the determination of a jury.

November 5th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October Term, 1886, No. 171.

This was a feigned issue, framed to determine the ownership of certain machines for making paper boxes, wherein Charles Buckley was plaintiff and P. Duff & Sons were defendants.

The facts of the case appear from the following opinion of the court. STOWE, P., J., directing judgment to be entered for the defendant *non obstante veredicto*:

On the trial of the case the following facts were proven and admitted, viz.:—

That on the 1st of July, 1872, Charles Buckley, the plaintiff, sold his paper box manufactory to the firm of Greaves & Marland, taking, in payment therefor, judgment notes. The purchasers paid all these notes except the last one, which was for $358.33, maturing July 1st, 1874. On April 7th, 1875, the purchasers having failed to pay this note for three hundred and fifty-eight dollars and thirty-three cents, ($358.33), an arrangement was effected by which Greaves & Marland gave to Buckley a bill of sale of certain paper box making machines, being a part of the stock and fixtures originally sold to them by Buckley, and took from the said Buckley a lease of said machines at a fixed rental. The lease is as follows:—

" I, Charles Buckley, agree to rent Greaves & Marland one Clark's machine, one Dennison machine, one corner cutter, one Bates' oval cutter, and two pairs of Brombacker shears, now in the third story of house No. 92, Third avenue, in this city, for the sum of fifty cents per week, which they agree to

pay on the first Monday of each and every month from this date.

"PITTSBURGH, April 7th, 1875.

[Signed,]                    "GREAVES & MARLAND.
                             "CHARLES BUCKLEY."

The unpaid judgment note for $358.33, was then cancelled, and the machines remained as before, in the possession of Greaves & Marland.

Under this arrangement Greaves & Marland continued business as before, and under the same business sign, until the withdrawal of Marland from the firm.   The machines remained in the use and possession of Greaves & Marland continuously from the sale by Buckley to them in 1872, until the sheriff's levy upon them in this case, December, 1882, at the suit of P. Duff & Sons, the defendants, to whom Greaves, successor to Greaves & Marland, had given a judgment note for an indebtedness accruing some years after the lease to Greaves & Marland of the machines now in dispute.   Greaves & Marland paid to Buckley the fixed rental for said machines, two dollars per month, from April, 1875, until the levy on the same in 1882.   Buckley kept the machines insured for the same period, as his property.   There was no evidence that, at the time of the transaction of April 7th, 1875, Greaves & Marland were indebted to any other persons than to the plaintiff, Charles Buckley.

Under the above admitted facts, the court directed the jury to find a verdict for the plaintiff, subject to the opinion of the court on a question of law reserved, which question is:  "Was the transaction of April 7th, 1875, by which the machines were assigned and transferred to Buckley, fraudulent in law as to creditors.

The transaction of April 7th, 1875, was, we think, clearly a re-sale of the machines by Greaves & Marland to Buckley, the plaintiff.   There was no change of possession in fact, nor any reason shown why there could not be.   Nothing was done but giving a bill of sale to Buckley and taking a lease from him. The machines remained in the possession of Greaves & Marland just as they had done before, and their business was carried on just as it had been before the transfer, down to the time of the levy by the sheriff on the writ of the defendants' creditors.   We think this case is ruled by Clow *v.* Woods, 5 S. & R.; 278;  Cunningham *v.* Neville, 10 S. & R., 201;  Babb *v.* Clemson, 10 S. & R., 419;  Stuper *v.* Eckart, 2 Wh., 302;  Hoofsmith *v.* Cope, 6 Wharton, 53;  McBride *v.* McClelland, 6 W. & S., 94;  Stark *v.* Ward, 3 Pa. St., 328;  Milne *v.* Henry, 40 Pa. St., 352;  Henry *v.* Milne, 43 Pa. St., 418;  and that class of cases which hold that a transfer of personal property

unaccompanied by a corresponding change of possession, is void *per se* as to creditors.

In Cunningham v. Neville, 10 S. & R., 201, the court held in an opinion by C. J. GIBSON that, "where goods assigned are susceptible of delivery, a mere symbolical delivery is not sufficient to exempt the case from the charge of legal fraud, if the assignor retain possession."

In McBride v. McClelland, 6 W. & S., p. 94, the court held that "a symbolical, constructive or temporary delivery of personal property is not sufficient to change the ownership as to creditors; there must be an actual delivery at the time of the transfer, and a continuing possession; otherwise, the sale, although *bona fide* as between the parties themselves, is fraudulent in law." And the court further says, in its opinion: "In order to make a transfer of personal property available against creditors, . . . . . it must be accompanied by a change of possession at the time, or within a reasonable time thereafter. The change of possession must be *bona fide*, not colorable—clear, unequivocal and exclusive. The rule is intended to prevent fraud, and avoid the danger to creditors, by giving a man a false and delusive credit . . . . . and how is it possible that a change, merely for a single night or day, can answer the purpose, and advise the public of the change of ownership in the property. It is not sufficient that the assignor give to the assignee a delivery, which may be symbolical, or constructive, or a temporary delivery, and then take the articles back into his own possession, and keep and use them just as before. This is not the possession in the assignee which the law requires. There must be not only a delivery of the thing at the time of the transfer, but a continuing possession, and that must be shown by the claimant.

So Chief Justice THOMPSON, in delivering the opinion of the court, in Milne v. Henry, 40 Pa. St., 358, says:—

In Young v. McClure, 2 W. & S., 147, this court said, following established doctrine and developing nothing new: "The question, however, is not in these cases (of retained possession by a vendor), whether under all the circumstances, the transfer is in good faith, and without design to cover the property, or to hinder or delay creditors. It is an inflexible rule, which makes it fraud *per se*, if the possession does not follow, as well as accompany, the transfer: Clow v. Woods, 5 S. & R., 275; Babb v. Clemson, 10 S. & R., 419; Carpenter v. Moyer, 5 Watts, 485; Hamilton v. Russell, 1 Cranch, 309." If it was a fraud in law, without regard to the intent of the parties, it becomes a question for the court and not for the jury to decide: Dornick v. Reichenbach, 10 S. & R., 84; Carpenter v. Moyer, 5 Watts, 483. . . . . See also, 6 Casey, 639; 6 Harris, 113;

and particularly Twyne's Case, 1 Smith's Leading Cas., 47, 5th ed. Am., note; where this whole subject is fully and learnedly examined, and the law stated in accordance with the principles here declared.

In our opinion, there having been no such change of possession as is required by law, nor of which the property was susceptible, the transaction of April 7th, 1875, by which the machines were assigned and transferred to Buckley, the plaintiff, was fraudulent in law, and void as to creditors; and judgment must be entered for the defendants, *non obstante veredicto.*

The plaintiff thereupon took this writ, assigning for error the entry of the judgment for the defendant *non obstante veredicto.*

*John Douglas* (*George Elphinstone* with him), for plaintiff in error.

The sale in this case was not fraudulent. In the sale of personal property no such change of possession as will defeat the fair and honest object of the parties is required : Crawford *v.* Davis, 3 Outerbridge, 576 : A change of location of the property is not essentially necessary. If the purchase was made in good faith, and for a valuable consideration, followed by acts intended to transfer the possession as well as the title, and the vendee assumed such control of the property as to reasonably indicate a change of ownership, the delivery of possession cannot, as a matter of law, be held insufficient. The case should be sent to the jury to find whether the sale was in good faith or merely colorable. Everything was done by vendors and vendee that is here required, or that under the circumstances could be reasonably asked.

The last decision given upon this question by this court is in the case of Cessna *v.* Nimick, *et al.*, 3 Amerman, 70. It is couched in language almost identical with that just given, and quotes approvingly the case of Billingsley *v.* White, 9 P. F. S., 464.

The case should be sent to the jury to find whether the sale was in good faith or merely colorable : Crawford *v.* Davis, 3 Outerbridge, 576 ; Dunlap *v.* Bournonville, 2 Casey, 72; McKibbin *v.* Martin, 14 P. F. S., 352.

In the notes of J. C. Perkins, Esq., to Vesey, Jr.'s Reports : Lush *v.* Wilkinson, 5 Vesey, Jr., 387, (n. b.) it is said : " The true doctrine, as now held, seems to be that a voluntary conveyance is not *per se* fraudulent even as against existing creditors. And where there is no evidence of fraud in fact in the giving of the deed, nor any subsequent acts of the parties from which fraud can be inferred, subsequent creditors of the grantor cannot avoid the deed by showing that the considera-

[Buckley v. Duff & Sons.]

tion expressed therein was not the true consideration. The question is one of fact for a jury." · In support of this position, Mr. Perkins cites the following authorities: Bank of U. S. *v.* Housman, 6 Paige, 526; Jackson *v.* Seward, 8 Cowen, 406; Jackson *v.* Peck, 4 Wendell, 300; Hopkirk *v.* Randolph, 2 Brockenbroughs, 132; Van Wyck *v.* Seward, 6 Paige, 62.

To prove fraud it must be shown that, at the time of the sale, the vendor was about to engage in some hazardous business: Monroe *v.* Smith, 29 P. F. S., 461. This is not even alleged in this case.

Retention of possession by the vendor is not conclusive of fraud. It may be explained satisfactorily: Bissell *v.* Hopkins, 3 Cowen's Reports, 166; Kidd *v.* Rawlinson, 2 Bosanquet & Puller's Reports, 59; Watkins *v.* Birch, 4 Taunton, 823.

The question of change of possession is a matter to be considered by the jury: Chase *v.* Ralston, 30 Pa. St., 539; Evans *v.* Scott, 89 Pa. St., 136.

A deed may be voidable as to existing creditors, and yet not voidable as to subsequent creditors; for it is bad only as to those whom it is intended to defraud: Monroe *v.* Smith, 29 P. F. S., 461; Byrods' Appeal, 7 Casey, 241.

*George B. Gordon (John Dalzell* with him), for defendant in error. A change of location is not absolutely necessary, but such a transfer of possession as will indicate a change of ownership is. And this must necessarily be so if the statute is to have any effect.

In the case at bar there was no change of possession, nor was anything done that would " reasonably indicate a change of ownership," and we submit that it was one of those secret sales that have always been held to be within the statute of Elizabeth.

Mr. Justice CLARK delivered the opinion of the court, February 7th, 1887.

No question of actual fraud arises upon this record; the court gave binding instructions to the jury to find for the defendant, upon the ground that the transaction of 1875, between Greaves & Marland and Buckley, was fraudulent in law; the case must therefore be considered apart from any allegation of intentional fraud.

The general rule of law is undoubted that where the sale of personal goods, reasonably susceptible of delivery, is not accompanied by a transfer of the actual possession, although valid and binding as between the parties (Boyle *v.* Rankin, 22 Pa. St., 168), it is a fraud *per se* as to creditors and *bona fide* subsequent purchasers, without regard to the intent of the par-

ties, (Clow *v.* Woods, 5 S. & R., 275; Babb *v.* Clemson, 10 Id., 419); and the question where the facts are established, is for the court and not for the jury: Dornech *v.* Reschenbach, 10 S. & R., 84; Young *v.* McClure, 2 W. & S., 150. The rule is subject to some modifications, however, in particular cases. It often happens, too, that the subject of sale is not reasonably capable of an actual delivery, and then a constructive delivery has been held to be sufficient. "In such case," said Mr. Justice SHARSWOOD in McKibben *v.* Martin, 14 P. F. S., 352, "it is only necessary that the vendee should assume the control of the subject, so as reasonably to indicate to all concerned the fact of the change of ownership." "The question in such case is, did the vendee do all that he might reasonably be expected to do in the case of a real and honest sale?" "Regard must be had not only to the character of the property, but to the nature of the transaction, the position of the parties, and the intended use of the property; no such change of possession as will defeat the fair and honest object of the parties is required:" Crawford *v.* Davis, 3 Out., 576; McClure *v.* Forney, 11 Outerbridge, 414.

In the case at bar, the consideration of the sale was fully paid by the cancellation of the note; the machines were surrendered to Buckley, who thereupon formally leased them to Greaves & Marland at their full rental value; Buckley had them insured in his own name; the machines remained in the mill, the place in which they were to be used, and for seven years the rent was regularly paid. It may be, perhaps, that this was of no avail to defeat the claims of existing creditors, or of *bona fide* purchasers. That question we are not called upon to decide; it has not been shown that Greaves & Marland were at the time indebted to any one, in any sum whatever, excepting to Buckley, to whom they sold the machinery, and it is not pretended, that there was any *bona fide* subsequent purchaser. Nor does it appear that Greaves & Marland had entered into, or were about to enter into, any hazardous business, or that they contracted any indebtedness thereafter, or that they anticipated any indebtedness, from any cause whatsoever. There is, in fact, nothing in the case from which any fraudulent notice might be inferred. The purpose of the Acts of 13th and 27th Elizabeth, as has been well said, was "to place parties under a disability to commit fraud in requiring for the characteristics of an honest act, such circumstances as none but an honest intention can assume."

There is nothing, we think, in the circumstances of this case which is consistent with a dishonest motive on the part of Marland & Greaves; the debt upon which the execution was issued was not the debt of Greaves & Marland, but the debt

[Kaut et al. *v.* Kessler et al.]

of Greaves alone, and was not created for some years after the
sale.    The rule in Pennsylvania is, that a transfer void as to
existing creditors is not necessarily void as to subsequent cred-
itors; it is bad only as to those it was intended to defraud:
Byrod's Appeal, 7 Casey, 241; Monroe *v.* Smith, 29 P. F. S.,
459.    If the transaction is not fraudulent as to existing cred-
itors, and in this case, as we have said, there were none,
subsequent creditors can avoid the sale only under special cir-
cumstances, as for instance, by showing that it was made with
a view to incurring liability, or to provide against the contin-
gencies of a hazardous business, which gave rise to their debts;
and cases of this character are ordinarily under proper instruc-
tions for the determination of a jury.    Such is the doctrine of
Snyder *v.* Christ, 3 Wright, 499; Monroe *v.* Smith, 29 P. F. S.,
459; Harlan *v.* McLaughlin, 9 Norris, 293.    Although the.
cases cited relate to transfer of real estate, the rule is alike
applicable on questions affecting the sales of personal property.

For the reasons stated, we are of opinion that the judgment
must be reversed.

Judgment reversed.