Hemphill Co. *v.* Davis Knitting Co. et al.,
Appellants.

Argued March 14, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM,
BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John T. Olmstead,* for appellant.

*George L. Reed,* and with him *Elmer E. Erb* and *William S. Bender,* for appellee.

OPINION BY STADTFELD, J., July 13, 1934:

This was a replevin action by Hemphill Company against H. B. Davis, trading as the Davis Knitting Company, in which Market Street Trust Company intervened claiming it had purchased the eight machines, sought to be replevied, at a constable's sale under a distraint for rent. A counter bond having been filed, the action was for the value of the machines. The Hemphill Company, in its statement of claim, claimed title to eight knitting machines, alleging these had been leased to Davis. The trust company denied the title of the Hemphill Company, claiming an alleged reconveyance of the machines by Davis to the company was void and averred that the trust company had title to the machines by reason of having purchased them at the constable's sale for rent under a landlord's warrant from the Commonwealth Trust Company, Harrisburg, Pennsylvania, landlord of Davis. The case was tried before Fox, J., of the Dauphin County Court, and a verdict rendered against the intervening defendant in the sum of $2,240. A motion for judgment n. o. v. was denied.

The evidence showed Davis leased space in the Vernon Industrial Building in Harrisburg, wherein to knit hosiery, from the Commonwealth Trust Company, apparently under an original oral agreement, effective in December of 1927, and reduced to a written lease on February 25, 1928. Previously he had ordered from Hemphill Company (plaintiff) eighteen machines at a price of $475 each, on terms of "2%—10 days, Net 30 days." Hemphill Company did not accept the order until December 16, 1927, on which day it received a telegram from H. A. Dent, of Seattle, Washington, whereby he undertook to guarantee the account of Davis up to $5,000. Davis having received the machines made payments totalling $4,750, the cost price of ten machines. On April 28, 1928, Hemphill Company wrote Davis about the balance due, saying if he could not comply with the terms of sale it would be "necessary to arrange for a lease or take back the machines." A bailment lease was thereafter drawn, purporting to cover eight of the machines then in the possession of Davis, bearing date of April 30, 1928, but not actually executed for from eight to ten days thereafter. There was no bill of sale reconveying the machines to Hemphill Company and the latter never took any physical possession of them, nor caused them to be in any way marked as its property. When the lease was executed Davis owed some money to creditors, which was subsequently paid off in the ordinary course of business. The Market Street Trust Company, (intervening defendant and appellant here) was not at that time a creditor.

On August 3, 1928, Davis requested a line of credit from Market Street Trust Company, submitting a financial statement which made no reference to the bailment lease, nor to any note executed simultaneously therewith, or subsequently, in favor of the Hemphill Company. Market Street Trust Company extended

credit and thereafter Davis was continuously indebted to it.

On May 7, 1930, Davis owed five months rent and a landlord's warrant was issued distraining for this rent. On May 15, 1930, Market Street Trust Company charged off $336.61, then in the deposit account of Davis, and credited this amount upon an overdue note upon which judgment had been entered, leaving the debt still owing $1,093.39. This made worthless a check on Market Street Trust Company which, on May 13, 1930, Davis tendered his landlord for three months rent. Davis testified when he did this he was told the distress proceedings would be discontinued. The landlord's witness said it would be discontinued if the check proved good. After May 15th the constable put up sale bills and on May 24th sold all of the machinery and equipment of Davis at public sale. Market Street Trust Company, as high bidder, became the purchaser for $563.

In December of 1930 Hemphill Company issued a writ of replevin for the eight machines covered by the bailment lease. Market Street Trust Company was permitted to intervene, file a counter bond and retain the machines. At the trial there was some evidence of irregularities in the constable's sale. The court left it to the jury to decide, (1), whether or not the attempted reconveyance by Davis to Hemphill Company and the bailment lease under which plaintiff claimed title were fraudulent, and (2), whether or not the constable's sale was regular. A verdict was rendered for Hemphill Company in the sum of $2,240. The motion of Market Street Trust Company for judgment n. o. v. was overruled and judgment entered on the verdict in an opinion by Fox, J. From that judgment this appeal was taken by Market Street Trust Company, intervening defendant.

(1) As to the bailment lease: Appellant contends

that the trial judge should have held as a matter of law that the plaintiff did not have the title or right of possession necessary to maintain replevin, on the theory that the bailment contract was a fraud upon the creditors.

The agreement to execute a bailment lease, even if the machines were delivered pursuant to a contract of sale, was clearly lawful as between the parties, and not fraudulent unless creditors were prejudiced. The intervening defendant first became a creditor of Davis three months after the execution of the bailment lease, viz., August 3, 1928, and appears in this case. not as a creditor, but claiming title as owner of the property replevied. As stated in Buckley v. Duff, 114 Pa. 596, 603: "The rule in Pennsylvania is, that a transfer void as to existing creditors is not necessarily void as to subsequent creditors; it is bad only as to those it was intended to defraud: Byrod's Appeal, 7 Casey 241; Monroe v. Smith, 79 P. F. S. 459. If the transaction is not fraudulent as to existing creditors, and in this case, as we have said, there were none, subsequent creditors can avoid the sale only under special circumstances, as for instance, by showing that it was made with a view to incurring liability, or to provide against the contingencies of a hazardous business, which gave rise to their debts; and cases of this character are ordinarily under proper instructions for the determination of a jury. Such is the doctrine of Snyder v. Christ, 3 Wright 499; Monroe v. Smith, 29 P. F. S. 459; Harlan v. McLaughlin, 9 Norris 293. Although the cases cited relate to transfer of real estate, the rule is alike applicable on questions affecting the sales of personal property."

As stated by Mr. Justice Sadler in Schmidt v. Bader, 284 Pa. 41, at page 46: "Even if he had intended to sell originally when the machinery was forwarded on June 5th ...... there would have been no

reason why he, as the purchaser and owner, could not have made some other arrangement, prior to the intervention of the rights of others."

Appellant contends that plaintiff has no right to maintain replevin because the eight machines were not physically returned to plaintiff and redelivered by plaintiff when the bailment contract was entered into. The trial judge held that there could be a constructive delivery. This is in harmony with the principle as stated in 55 Corpus Juris, 258: "If a contract of sale is executed redelivery of the goods is necessary to complete an agreement to rescind. ...... this agreement is fulfilled by a constructive delivery, as where the vendee holds the goods as bailee for the seller."

In Michael v. Stuber, 73 Pa. Superior Ct. 390, an action of replevin to recover possession of an automobile sold and delivered, the consideration was paid part in cash, and part by note. Without change in physical possession of the car, the original sale was changed to a contract of bailment. The language of the trial judge, STEWART, P. J., is most pertinent: "The confusion in the mind of the defendant's counsel results from the fact that he fails to distinguish between the law relating to sales and delivery of possession as between the parties, and that which governs when the rights of creditors attach. So far as the parties are concerned, the question of the possession of the automobile is governed entirely by their agreement." This language was approved by this court in an opinion by our late Brother HENDERSON, J., as a correct statement of the law. We find no error in the charge of the court or in the answers to the points submitted so far as the validity of the bailment lease was involved.

(2) As to the constable's sale: The claim of the defendant to the eight machines in controversy de-

pended upon the validity of the title acquired at the constable's sale under the distress warrant for rent.

At the trial of the case a question arose, under the testimony, whether written notice of the distraint proceedings had been given as required under the Act of Assembly; also whether the original distraint had been abandoned, and whether proper efforts were made to sell the articles separately before selling the same in lots or as a whole. All of these questions were involved in the validity of the sale. These were questions to be decided by the jury to determine whether the distress procedure complied with the statutory requirements, and whether the sale was such as to vest in the defendant a legal title to the articles in question. This burden was on the defendant. Quoting from the opinion of the late President Judge Rice of this court in the case of Snyder v. Boring, 4 Pa. Superior Ct. 196, at 199: " 'As the proceeding is statutory, the direction of the statute must be followed or its protection will be lost. If the seizure is irregular, it is a trespass. If the seizure is regular, but the subsequent steps are not in accordance with the statute, the landlord becomes a trespasser ab initio by his departure from the directions of the law under which he must justify, and may be sued in the same manner as any other trespasser.' Esterly Machine Co. v. Spencer, 147 Pa. 466. The curative provisions of the 19th section of the act of parliament of the 11 Geo. II. Ch. 19, were not extended to Pennsylvania, and the law is imperative that before a sale can be lawfully made the wholesome provisions of the Act of 1772 must be strictly complied with: Kerr v. Sharp, 14 S. & R. 399; Brisben v. Wilson, 60 Pa. 452; Richards v. McGrath, 100 Pa. 389, 399; Murphy v. Chase, 103 Pa. 260; Davis v. Davis, 128 Pa. 100; Wyke v. Wilson, 173 Pa. 12." To same effect, see Peerless Soda Foun-

tain Service Co. v. Walsh et al., 105 Pa. Superior Ct. 71.

We have carefully read the able and exhaustive brief on behalf of appellant, but can not agree with its conclusions. We believe the case was submitted in a fair and comprehensive charge and find no error which would justify a reversal.

The assignments of error are overruled and judgment affirmed.