**In re MESSENGER et al.**
No. 20777.

District Court, E. D. Pennsylvania.
Feb. 26, 1940.

Rehearing Denied March 27, 1940.

Sundheim, Folz & Hirsch, of· Philadelphia, Pa., for reclamation petitioner.

George O. Philips and Levi, Mandel & Miller, all of Philadelphia, Pa., for trustee.

KALODNER, District Judge.

The bankruptcy referee dismissed a reclamation petition filed by Earl E. Crowley. Crowley thereupon filed a petition for review of the referee's decree.

The record discloses the following fact situation:

In December, 1938, Crowley was the manager of the Rydal Golf Club, Rydal, Pennsylvania. Frank V. Messenger and Harry T. Miller, individually and trading as M. & M., a partnership, were then engaged in the plumbing business. Messenger and Crowley had known one another for five or six years. According to Crowley's contention, Messenger attempted to borrow some money from him in the latter part of December, 1938. He testified that he declined to make the loan. He did, however, at that time "arrange" to buy a Chevrolet truck belonging to the partnership for a price of $225, and made a cash payment of $50 on account. Messenger retained possession of the truck until January 21, 1939, at which time, in accordance with Crowley's instructions, he delivered the truck to a repair shop designated by Crowley in order that certain repairs might be made. At that time Crowley obtained from Messenger the partnership certificate of title to the truck; had the title transferred;

placed insurance on the truck in his own name; the repair order was entered in the name of Crowley.

While the truck was at the repair shop, the creditors of Messenger and Miller, having issued a writ of execution against the partnership on January 14, 1939, the sheriff of Philadelphia County, in pursuance of the execution process, on January 25, 1939, seized the truck at the repair shop and took it into his possession.

On January 26, 1939, the day after the truck had been seized and removed by the sheriff, Crowley delivered to Messenger his check for $175, drawn to the individual order of Messenger for the balance of the $225 purchase price. The $175 check was post-dated February 7, 1939. Crowley admitted that he knew on February 2, 1939, of the sheriff's levy, and that he filed no property claim with the sheriff.

On February 6, 1939, Messenger and Miller were adjudicated bankrupts. On February 7, 1939, Messenger cashed the $175 check which had been given to him by Crowley on January 26, there having been no stoppage of payment by Crowley.

The truck was subsequently sold at public sale by the trustee in bankruptcy for the net sum of $330. It was stipulated by the parties that the proceeds of the sale stand in lieu of the truck in the event that the reclamation petition was successful.

It is admitted that Crowley knew at the time he bought the truck that it was partnership property. It is admitted, too, that he never discussed the purchase of the truck with the partner, Miller.

The master dismissed the reclamation petition on the ground that, assuming that there was a sale and not merely a pledge of the truck as security for the December, 1938, cash loan of $50, that Crowley's acquisition of the truck, with full knowledge at the time that the truck was partnership property, and without any consultation whatever with Messenger's co-partner Miller, was not binding upon Miller nor upon the execution creditors of the partnership, under the provisions of the Pennsylvania Uniform Partnership Act of March 26, 1915, P.L. 18, § 9, 59 P.S. Pa. § 31, and was also not binding upon the trustee in bankruptcy under Section 70, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c.

The master also found that, assuming that there was a sale, that such sale was a transfer void as against the partnership creditors and the trustee in bankruptcy, under the provisions of Sections 5, 7, 8, and 9 of the Pennsylvania Fraudulent Conveyances Act of May 21, 1921, P.L. 1045—39 P.S. Pa. §§ 355, 357, 358, 359 and Section 70, sub. c, of the Bankruptcy Act.

■ I am in accord with the master's findings that the sale was in violation of the Pennsylvania Uniform Partnership Act and the Pennsylvania Fraudulent Conveyances Act, above cited.

The relevant provisions of Section 9 of the Pennsylvania Uniform Partnership Act are:

"(1) Every partner is an agent of the partnership for the purposes of its business, and the act of every partner, * * * for apparently carrying on in the usual way the business of the partnership of which he is a member, binds the partnership * * *.

"(2) An act of a partner which is not apparently for the carrying on of the business * * * in the usual way, does not bind the partnership unless authorized by the other partners."

■ Section 9 of the Uniform Partnership Act generally is recognized as restricting the power of a partner to dispose of capital assets which are not the stock in trade of a mercantile partnership.

"A partner has no implied power to sell property of the firm not held for sale, for example, the real estate on which the business is conducted, the furnishings of an office, or the farming implements of an agricultural partnership. Such a sale would not be in the ordinary course of business." Crane & Magruder, Cases on Partnership (1924) p. 261, n. 34.

"Each partner has ordinarily implied authority, resulting from the very nature of the case, to sell, assign or dispose of, in the regular course of business, so much of the partnership personalty as is kept for sale." Mechem on Partnership (2d Ed. 1920) Sec. 274.

"The tendency of the modern cases is to limit the implied power of sale to the property which is held for the purpose of sale and not to include the property kept for the purpose of carrying on the business." Gilmore on Partnership (1911) p. 289.

In Rutherford v. McDonnell, 1899, 66 Ark. 448, 51 S.W. 1060, A and B were partners engaged in farming. A sold livestock

and farming utensils of the firm without the consent of B. Other problems were involved in the adjudication, but the court said, 66 Ark. at pages 450, 451, 51 S.W. at page 1061: "That property was not held for the purpose of sale, and we do not think that power to sell it without consent of the partner can be inferred from the terms of the partnership."

In the instant case, it is readily apparent that the truck in question was not held by the partnership for purposes of sale, since the partnership was not a trading association. Crowley testified that he knew the truck was partnership property. He admitted that Messenger previously had sought a loan. It is obvious that the money sought by Messenger was not for the purpose of replacing a necessary capital asset. The effect of the transaction under these conditions would be to hinder materially the continuation of the partnership business. Yet Crowley testified that although he knew that it was partnership property, that he had no dealings with Messenger's partner. The circumstances were such that Crowley should have been put on notice of a possible defect in the authority of Messenger alone to dispose of the property. The referee was justified in holding that the sale in question was not one in the usual course of business, nor even apparently so, in view of the fact that Crowley should have known that a capital replacement was not the purpose of the transaction.

As to the master's finding that the sale of the truck was void as against the trustee in bankruptcy under the provisions of the Pennsylvania Fraudulent Conveyances Act:

The transaction in question was voidable at the instance of the creditors of the seller and the trustee in bankruptcy, for the following reasons:

■ Apart from the application of the Uniform Fraudulent Conveyances Act, under Pennsylvania decisional law, the transfer was ineffective as against the creditors of the seller and, consequently, under Section 70, sub. e of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e, as against the trustee in bankruptcy.

Assuming the transaction in question to have been intended as a sale of the truck, Section 26 of the Uniform Sales Act (Act of May 19, 1915, P.L. 543; 69 P.S.Pa. § 204) provides: "Where a person having sold goods continues in possession of the goods * * * and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void."

■ The act does not attempt to make a rule as to what constitutes fraud but, instead, leaves the matter to the law of each state. When local law determines what constitutes fraud, the section quoted above then will apply.

■ With regard to Pennsylvania:
"It long has been the law in this State that where a sale of personal goods, reasonably susceptible of delivery, is unaccompanied by a transfer of actual possession, it is binding between the parties, but a fraud as to creditors: Cadbury v. Nolen, 5 Pa. 320, Buckley v. Duff & Sons, 114 Pa. 596 [8 A. 188]; Bowersox v. Weigle & Myers, 77 Pa.Super. 367." Notley v. Orr, C. P. Blair County 1921, 1 Pa. D. & C. 697.

"It is not sufficient, to make a transfer of goods available against the creditors of the assignor, that the possession be in the assignee *or changed at the time of the levy;* in order to render such transfer good, a corresponding change of the possession must accompany the transfer or follow it within a reasonable time thereafter; that is, as soon as the nature of the property or thing and the circumstances attending it will admit of its being done." (Italics supplied) Carpenter v. Mayer, 1836, 5 Watts 483, 485.

In McMarlan v. English, 1873, 74 Pa. 296, the evidence indicated that the seller had concurrent possession with the buyer of a small stock of goods for at least a month after the sale. However, nine months elapsed after the delivery of possession before a levy occurred and the court held that under these circumstances, the buyer would prevail. This great lapse of time between the delivery of possession and the levy appeared to have influenced the court in protecting the purchaser.

Upon the authority of the foregoing cases, Williston on Sales (2d Ed. 1924) vol. 1, Sec. 391, states the Pennsylvania rule as follows: "The change must be made at the time of the sale or within a reasonable time thereafter. But even if delayed, if a considerable time elapses between the time when the buyer assumes possession and when the attaching creditors levy, the buyer will be protected."

Consider, also, Spicks v. Prospect Brewing Co., 1902, 19 Pa.Super. 399 where defendant contracted to sell personal property to another but failed to deliver it until after the hour at which a writ of fi. fa. was placed in the hands of the sheriff. It was held that the plaintiff attaching creditor would prevail. The court declared that: "Since the passage of this act [Act of June 16, 1836, P.L. 755], the law has been uniformly held to require a levy upon a writ of fieri facias, so placed in the sheriff's hands, to be made before the return day of the writ, in order to make the lien from the time at which the writ was placed in the sheriff's hands good; but, when a proper levy is made before the return day of the writ, the levy itself relates to the hour at which the writ was placed in the sheriff's hands and indorsed thereon. * * * In Braden's Estate, 165 Pa. 184 [30 A. 746], it is said: 'As has already been noticed, the writ came into the sheriff's hands at 11:30 a. m. of November 27, 1889. By that mere fact, it became a lien upon all the personal property of the debtor until the return day, the 4th day of January, 1890; but then, unless an actual levy was made in the interval, the life of the writ expired.' "

With regard to the facts of the instant case, the referee found that the seller had retained possession of the truck for three weeks, which would appear to be an unreasonable period of time in view of the nature of the chattel. On January 14, 1939, a writ of execution was issued against the partnership. On January 21, 1939, Messenger delivered the truck to the repair shop designated by Crowley. On January 25, 1939, the sheriff seized the truck pursuant to the execution process.

■ At this point it may be noted that I agree with the fourth assignment of error that "The learned referee erred in finding that there was never any delivery of possession to Crowley." The record conclusively indicates the contrary, inasmuch as the truck was delivered by Messenger to a repair shop designated by Crowley; the repairs were made in accordance with Crowley's instructions; and lastly, Crowley undertook liability for payment of the repair bill. However, this error on the part of the referee was without prejudice to the reclamation petition.

■ It is clear that the transfer was a fraudulent conveyance as against the partnership under the terms of Section 8 of the Uniform Fraudulent Conveyances Act, already cited, which provides: "Every conveyance of partnership property * * * when the partnership is or will be thereby rendered insolvent, is fraudulent as to partnership creditors, if the conveyance is made * * * (b) To a person not a partner without fair consideration to the partnership as distinguished from consideration to the individual partners."

■ The act includes in the definition of fair consideration the element of good faith on the part of the transferee of the property in question. In this connection: "The question is solely whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors." Glenn on Fraudulent Conveyances (1931) Sec. 295.

In the present case, $330 may be taken as the true value of the truck and this without prejudice to the petitioner, especially in view of the fact that these were receipts from a public sale which ordinarily would bring less than the sum obtainable by private sale. The referee found that Crowley had given $225 for the truck; $50 in cash and $175 by check. Messenger testified that he used $120 of the proceeds to pay off wage claimants of the firm. (See Certificate of Review, pp. 54, 55); and for the purposes of our conclusion, we shall assume the credibility of his testimony.

Section 8 of the Uniform Fraudulent Conveyances Act speaks of a conveyance of partnership property when the partnership is or will thereby be rendered insolvent and to a person not a partner without fair consideration *to the partnership* as distinguished from consideration to the individual partners. That the partnership was insolvent for a considerable period prior to the filing of the petition and at the date of the transfer in question seems apparent from an examination of the schedules. With regard as to what is fair consideration to the partnership, the statute gives no definition. Professor Crane declares: "Payment of or security for a partnership obligation, though the partners or some of them may be separately bound, would seem to constitute fair consideration moving to the partnership, though it might constitute a preference. The question should be whether the result of the transaction is to disturb the balance between partnership liabilities and partnership property to

which partnership creditors have a primary right to resort as the means of payment." Crane on Partnership (1938) p. 183.

Assuming that the use of the proceeds to pay firm debts constituted consideration to the partnership to that extent, *and this is questionable in view of the fact that the consideration bargained for was not consideration moving to the firm* although if we are to believe Messenger, some of the proceeds actually were used to benefit the firm, nevertheless a benefit of $120 to the firm in exchange for a chattel worth $330 would not seem to be a fair equivalent.

Under Section 67, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d, it would seem that the trustee might avoid the conveyance for the benefit of creditors.

Section 67, sub. d, provides: "For the purposes of this subdivision d, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, but, *if such transfer is not so perfected prior to the filing of the petition in bankruptcy * * * it shall be deemed to have been made immediately before the filing of such petition."* Section 67, sub. d (5). (Italics supplied.)

Whatever may be the proper interpretation of the U.F.C.A. on this point, Section 67, sub. d, of the Bankruptcy Act definitely refers to the mental state of the transferee, as applied to Crowley under the present facts, as that existing immediately before the filing of the petition. Before this date, a writ of execution had been issued. Thereafter, although there is no direct evidence that Crowley knew of this fact, he did request delivery of the truck to the garage, obtained the partnership certificate of title, forwarded it to Harrisburg, had a new certificate issued in his name and caused insurance to be placed on the truck in his name. Then, a levy was made. Crowley testified that he gave Messenger a check for $175 on January 26, 1939 (after date of delivery to the garage and after date of levy on the truck) and post-dated it to February 7th. It must be noted that he retained the power to stop payment if he felt that his title would be jeopardized. The sheriff levied on January 25th and Crowley was notified, about that date, of the levy. (See Certificate of Review, p. 45.) The foregoing would seem to indicate that before February 6th, the date of the filing of the petition in bankruptcy, there are sufficient circumstances to support a finding that Crowley had knowledge of his vendor's circumstances and inasmuch as Messenger was insolvent immediately before then, and since the date of the transfer under Section 67, sub. d(5) is deemed to have taken place immediately before the filing of the petition, the circumstances would give rise to a fraudulent transfer within the purview of Section 67, sub. d(2) (a) of the Bankruptcy Act providing: "Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition in bankruptcy * * * is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent."

Under Section 67(d) (6), the trustee might avoid the transfer. "A transfer * * * by a debtor adjudged a bankrupt under this Act [title], which is fraudulent under this subdivision d against creditors of such debtor having claims provable under this Act [title], shall be null and void against the trustee * * *."

One of the assignments of error is the finding of the referee that "The learned referee erred in finding that Crowley knew that Messenger was having trouble with his creditors." The record sustains the referee's finding in this respect. Even if the referee erred in this respect it would not be reversible error, inasmuch as it was not prejudicial to the petitioner, since the transaction was void under the Uniform Partnership Act and void under the Uniform Conveyances Act.

I am in agreement with the assignment of error that "The learned referee erred in admitting into evidence the statement of the witness Tanzolo, and in giving any credence to the facts contained in the said statement."

The Certificate of Review (pp. 46 et seq.) shows that Tanzolo testified that he served a notice on Crowley that there was going to be a receiver's sale and that Crowley made some statements at the time of the receipt of service which Tanzolo reduced to writing on the same day. He testified that the writing was an accurate summary of Crowley's statements. Counsel for the trustee thereupon offered it into evi-

dence (apparently as an admission) and over the objection of counsel for the petitioner, it was allowed.

It is submitted that the ruling of the referee was erroneous. Before discussing the applicable rules of evidence, it should be noted that General Order XXII, 11 U.S.C.A. following section 53, provides: "The examination of witnesses before the referee * * * shall be governed by the Rules of Civil Procedure for the District Courts of the United States * * * in so far as they are not inconsistent with the Act or with these general orders."

▆ Rule 43(a), 28 U.S.C.A. following section 723c, regarding choice of law with respect to rules of evidence, refers to these three sources: (1) federal statutes; (2) rules formerly applied in federal equity suits and (3) local law. If the evidence is admissible under any of these, it is admissible in the federal trial.

▆ Generally speaking, memoranda have been used in evidence with regard to three situations:

(1) When such refreshes the memory of a witness so that he may testify from his own present recollection.

(2) Where the witness no longer has a present recollection but recalls having made an accurate memorandum of the event at or near the time in question.

(3) Where the witness has no present recollection and cannot vouch from his original memory as to the accuracy of this particular memorandum but can swear from his habits and course of business that the memorandum would not have been made unless it was correct.

In the first situation above, the evidence is the testimony of the witness and not the writing which is used only to stimulate the memory of the witness. In the second and third situations noted, the evidence is the writing itself. In the instant case, the writing itself was admitted into evidence without any testimony on the part of the witness as to the statements of Crowley and without any indication that the witness lacked a present recollection of the event in question. This was error, in so far as the memorandum of the past recollection should not have been admitted without a showing that the witness lacked a present recollection.

▆ "Where a witness has a present recollection of a past event, although his memory is refreshed by a memorandum made at the time of the event, he testifies from such recollection; *but where he has no present recollection of such past event, even when aided by his memorandum,* the latter itself may be offered in evidence, on proof by the witness * * * of its accuracy when made, and that it was made when the transaction was fresh in his mind." Christian Moerlein Brewing Co. v. Rusch, 1922, 272 Pa. 181, 187, 116 A. 145, 147. (Italics supplied.)

"There is no difficulty about the rule in matters of this kind. The recollection of the witness—not the memorandum used to refresh it—is the real evidence. * * * If the witness has a present recollection of a past event, although his memory may be refreshed by a memorandum made at the time, he testifies from such recollection. When a witness has no present recollection of a past event, even when aided by a memorandum made by him or under his immediate supervision, the memorandum itself may be admissible." Commonwealth v. Perri, 1929, 97 Pa.Super. 78, 84.

Compare Harlan, J. in Vicksburg & Meridian R. R. v. O'Brien, 1886, 119 U.S. 99, 102, 7 S.Ct. 118, 120, 30 L.Ed. 299: "There are, however, other cases to the effect that, where the witness states, under oath, that the memorandum was made by him presently after the transaction to which it relates, for the purpose of perpetuating his recollection of the facts, and that he knows it was correct when prepared, although after reading it he cannot recall the circumstances so as to state them alone from memory, the paper may be received as the best evidence of which the case admits.

"The present case does not require us to enter upon an examination of the numerous authorities upon this general subject; for it does not appear here but that at the time the witness testified he had, without even looking at his written statement, a clear, distinct recollection of every essential fact stated in it. If he had such present recollection, there was no necessity whatever for reading that paper to the jury."

"In order to read from the memorandum or to introduce the same into evidence, it is first necessary for the witness to testify that he has no independent recollection of the facts recited in the memorandum. Deal v. Hubert, 209 Ala. 18, 95 So. 349." Jones on Evidence (2d Ed. 1926) vol. 5, Sec. 2393, n. 5.

In the absence of preliminary testimony to the effect that Tanzolo had no present recollection of Crowley's statement, it was error for the referee to admit into evidence a memorandum of his past recollection. However, this error on the part of the referee was without prejudice to the reclamation petitioner, and is in the same category as the fourth assignment of error previously dismissed.

In conclusion, the first, second, and third assignments of error are dismissed. The fourth and fifth assignments of error are sustained, but since they were without prejudice to the reclamation petition, the petition for review is denied, and the order of the referee is affirmed.

On Petition for Rehearing.

The petition for rehearing is denied.