## United States v. Kemmerer

*Wilson A. Wert,* for execution plaintiff.

*Gerald A. Gleeson,* United States attorney, for intervening claimant.

HENNINGER, J., October 6, 1941.—Defendants obtained a loan from the Department of Agriculture of the United States of America on March 25, 1938, and in compliance with the Act of July 15, 1936, P. L. 47, 21 PS §841, gave a chattel mortgage to secure said loan, which chattel mortgage was recorded in the Recorder's Office of Lehigh County, in Chattel Mortgage Book, vol. 2, p. 138, on April 19, 1938.

On February 1, 1933, defendants had borrowed $1,-700 from the Kustafiks and had executed and delivered to them a bond and mortgage for that amount and recorded in the same recorder's office on February 3, 1933, in Mortgage Book, vol. 416, p. 416.

On November 2, 1940, defendants were in default on the bond and mortgage and the Kustafiks caused an execution to issue against their real and personal estate, including the chattels mortgaged to the United States of America. At that time, defendants were also in default on the chattel mortgage, entitling the United States of America under the terms of said mortgage to immediate possession of the mortgaged chattels.

On November 18, 1940, William B. Cully, Jr., a representative of the Department of Agriculture, served notice upon the Sheriff of Lehigh County of the Government's lien upon the chattels but on November 19, 1940, the sheriff, nevertheless, sold the chattels under his writ and realized the sum of $203.55 therefor, conceded by all parties to have been a fair price. It was agreed by the parties that the proceeds of the chattels were to stand in their place and the money be distributed

to the party entitled to the chattels or their value at the time of sale.

This leaves for our consideration these questions:

1. Did the Department of Agriculture have a valid lien upon these chattels superior to the claims of an antecedent creditor of the mortgagor?

2. Did the department have the right of immediate possession thereof at and before the time of sale?

3. Did the department take all necessary steps to protect its rights?

4. Is the department entitled to the proceeds of the chattels in the sheriff's hands?

Since the case of Clow et al. v. Woods, 5 S. & R. 275, it has been settled law in Pennsylvania that a sale of personal property — and "sale" included "pledge" — without change of possession is void as to creditors and bona fide purchasers: Callahan v. Union Trust Company of Pittsburgh, 315 Pa. 274, 278; Shipler et al. v. New Castle Paper Products Corp., 293 Pa. 412, 421; Wendel v. Smith et al., 291 Pa. 247, 249. The rule is for the benefit of existing creditors, as well as others who may have lent credit later relying upon a debtor's apparent affluence: Buckley v. Duff & Sons, 114 Pa. 596, 603; Hemphill Co. v. Davis Knitting Co. et al., 114 Pa. Superior Ct. 94, 99.

Most of these cases have been decided upon the basis of a public policy to avoid the dangers of fraud and to avoid a breakdown in our credit system. It is conceded, however, that, regardless of the policy established by the courts, it is within the power of the legislature to change that policy. So, in Personal Finance Company of New York v. General Finance Co., 133 Pa. Superior Ct. 582, 587, it is pointed out that the hostility to chattel mortgages has been somewhat modified, as witness the very act on which the intervening plaintiff relies, viz, that of July 17, 1936, supra. In a footnote on page 308 of the opinion in Roos et al. v. Fairy Silk Mills,

etc., 334 Pa. 305, the court cited the prior acts of assembly, including the one in question, as authorizing chattel mortgages in Pennsylvania in certain cases.

The Department of Agriculture relies for the validity of its lien upon the Act of 1936, supra. The pertinent clause of that act (21 PS §841) is:

"Any person, association, partnership, or corporation may enter into an agreement with, and borrow funds from the Government of the United States, or any department, agency or instrumentality thereof, including, among others, the Reconstruction Finance Corporation and the R. F. C. Mortgage Company, on the security of the obligation of the borrower, and the repayment of any funds so borrowed or of any then existing indebtedness to the United States, or any department, agency or instrumentality thereof, may be evidenced by a bond containing a confession of judgment secured by a chattel mortgage upon any chattel or chattels of any kind or description. Such mortgage shall be a lien against the chattel or chattels thereby conveyed, and shall be good and available in law against any subsequent purchasers or execution creditors upon the recording thereof, as hereinafter directed."

It is conceded that the department's lien is within the act and that the chattel mortgage was properly recorded within the time specified, was for a valuable consideration, was in default, and had not lost its lien through lapse of time. There is no constitutional question involved, for the creditor had no property rights in his debtor's unpledged personalty.

Since the legislature had the right, in its wisdom, to change the settled policy of the Commonwealth, our next inquiry is to determine the extent to which that policy was changed. Courts hitherto construing the Act of 1936 have held that, since it is in derogation of the common law, it cannot be extended beyond its plain import: Radel's Estate, 42 Dauph. 387; Young, to use,

etc., et al. v. Kipe et al., 38 D. & C. 434, 437. On the other hand, as a remedial act, enacted for the benefit of the agricultural interests of the Commonwealth, it must be given an interpretation which will carry into effect the avowed purpose of the act: Karns et al. v. East Central Fruit Growers Production Credit Assn., 20 D. & C. 83, 90; Young, to use, etc., et al. v. Kipe et al., supra, p. 437. Although an act of assembly may be strictly construed, that does not require that the words be given their narrowest meaning, or that the lawmakers' evident intent be disregarded: Commonwealth v. Bienkowski, 137 Pa. Superior Ct. 474, 481.

Plaintiffs' contention is that, granting the validity of this type of chattel mortgage, nevertheless, by the wording of the act, intervening plaintiff's mortgage is not effective against existing creditors at the time of the delivery of the chattel mortgage. This is based on the above-quoted language from the Act of 1936, that the mortgage shall be "good and available in law against any subsequent purchasers or execution creditors". Plaintiffs ask us to find that the adjective "subsequent" refers to "execution creditors" as well as to "purchasers", and, since plaintiff was not a subsequent execution creditor, that the chattel mortgage was invalid as to them.

We cannot adopt plaintiffs' stand. In the first place, while plaintiffs were prior creditors, they were not prior execution creditors, for they did not become execution creditors until long after the chattel mortgage had been properly recorded.

Nor can we agree that the adjective "subsequent" defines the words "execution creditors". If there were a comma between the words "purchasers" and "execution creditors" there could be no question of interpretation. While the only other act (Act of April 5, 1853, P. L. 295, 21 PS §831) containing these words is punctuated like this one, Justice Williams in interpreting that act in Hosie et al. v. Gray, 71 Pa. 198, 203, punc-

tuated that phrase by inserting a comma after the word "purchaser".

There can be no significance in the absence of a comma in this act for under section 53 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §553, "In no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment thereof". The sense of the language used is that the chattel mortgage is valid against two classes of persons: (1) Subsequent purchasers, and (2) execution creditors. "Execution creditors" includes, then, any creditor issuing execution, regardless of when he became a creditor. This interpretation was adopted in Karn et al. v. East Central Fruit Growers Production Credit Assn., supra.

Any other interpretation would frustrate the purpose of the 1936 act. The evident purpose of the act was to create a new type of secured loan to aid a distressed group. If the security is invalid against the debtor's general creditors, it is of no value whatsoever and the Department of Agriculture would not invest in so risky a venture funds which were intended for secured loans. Furthermore, these loans were not intended to be invalid against the holder of the mortgage on the farm itself, for it is that farmer, whose farm is already mortgaged, who is most in need of credit upon a chattel mortgage.

Under section 4 of the 1936 act (21 PS §844), intervening plaintiff was entitled to possession of the mortgaged chattels on November 2, 1940, the date of the sheriff's levy on plaintiffs' judgment, since defendants were then in default upon the chattel mortgage.

It follows that intervening plaintiff had a right to the goods superior to that of the execution creditor, the sheriff, the defendants, or the purchasers. It could have instituted an action of replevin after sale: Collins v. Bellefonte Central Railroad Co., 171 Pa. 243, 258. It could have proceeded against plaintiff for ordering the

sale of the goods: Summit Hosiery Co. v. Gottschall, 292 Pa. 464, 467. It could have sued the sheriff for selling goods not subject to levy: Book et al. v. Day et al., 189 Pa. 44, 47.

Written notice having been given to the sheriff prior to sale, intervening plaintiff fulfilled all of its duties to protect its goods. The sheriff, thereafter, proceeded at his own risk. We have found no requirement, either in the Sheriff's Interpleader Act of June 22, 1931, P. L. 883, 12 PS §2358, or in our court rules, specifying any formalities in the making of a claim. Notice to the sheriff seems to be sufficient and that was given in this case: Lamberton National Bank v. Kineston, 114 Pa. Superior Ct. 365.

Under the stipulation of facts and the questions of law upon which our decision is to be predicated, intervening plaintiff is to recover only if the sheriff committed an act of conversion. The sheriff, upon notice of the department's prior right to the goods, could have done either one of two things. He could have issued a rule for an interpleader, which would have stayed the sale. Neither party desired this as the goods were cumbersome, having been abandoned by defendant. He could have sold only defendant's interest: Patterson v. Anderson, 40 Pa. 359, 363; Dixon v. White Sewing Machine Co., 128 Pa. 397, 406. It is clear that he did not do this for he delivered the goods to the respective purchasers, an act beyond his power, since the department was entitled to possession.

The parties have stipulated that the proceeds of the sale are to be substituted for the goods themselves and, since there was a conversion of the goods, intervening plaintiff is entitled to the proceeds. As it was to the best interests of all parties that the goods should be disposed of, so that the cost of their care should not consume their value and as it is agreed that they produced their full value, it is only fair that the department should bear that part of the cost which relates to the

care and sale of the goods. It is to be noted that most of these costs were involved before the sheriff had any notice of the department's claim and the others were upon the consent of its representative that it was to the best interests of all that the goods should be disposed of.

We make this equitable disposition of the case because the present controversy as presented to us does not fall within the lines of any recognized legal procedure. It is an appeal to equity, rather than a demand for the enforcement of a legal right. It most nearly resembles exceptions to a sheriff's schedule of distribution and we have treated it as such, sustaining the department's exceptions, allowing the sheriff the necessary expense in producing the fund, and awarding the net proceeds of the sale of the mortgaged chattels to the United States of America. . . .